Paulette **PAPILSKY**, Plaintiff-Appellee,

v.

Alvin H. **BERNDT** et al., Defendants-·Appellants,
and
Carl W. **Knobloch** et al., Defendants.

No. 759, Docket 72–1052.

United States Court of Appeals,
Second Circuit.

Argued May 24, 1972.

Decided Aug. 1, 1972.

Certiorari Denied Dec. 18, 1972.
See 93 S.Ct. 689.

Abraham L. Pomerantz, New York City (Mordecai Rosenfeld, William E. Haudek, Daniel W. Krasner and Pomerantz, Levy, Haudek & Block, New York City, on the brief), for plaintiff-appellee.

Judson A. Parsons, Jr., New York City (Hugh N. Fryer, Keith E. McClintock, Jr., Patricia A. Nelson and Dewey, Ballantine, Bushby, Palmer & Wood, New York City, on the brief), for defendants-appellants.

Before LEVENTHAL,\* FEINBERG and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

The essential issue on this appeal is whether dismissal of a stockholder's derivative suit, without notice to nonparty stockholders, under Fed.R.Civ.P. 37(b)(2) (C), for failure to answer interrogatories, operates as a bar to an identical cause of action asserted by another

---

\* Of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation.

stockholder in a subsequent derivative suit.

Plaintiff Paulette Papilsky is a shareholder of defendant Affiliated Fund, Inc. and brought this action derivatively on behalf of Affiliated, a diversified open-end investment company registered under the Investment Company Act of 1940. Defendant Lord, Abbett & Co. serves as Affiliated's investment adviser and as its principal underwriter. Defendants Driscoll and Berndt are partners in Lord, Abbett and officers and directors of Affiliated. Papilsky's complaint alleged that these defendants failed to recapture, and to credit Affiliated with, allegedly recapturable portions of brokerage commissions paid on portfolio transactions and asserted that this has resulted in the payment of higher management fees to Lord, Abbett, all in violation of the federal securities laws.[1] Shortly after the complaint was served, defendants Driscoll, Berndt and Lord, Abbett served and filed a motion seeking summary judgment on the ground of *res judicata*. They alleged that the claims asserted by Papilsky were identical to those asserted in a previous derivative suit against Driscoll, Berndt, Lord, Abbett and other defendants entitled White and Bernstein v. Driscoll, et al., 67 Civ. 98 (S.D.N.Y., filed Dec. 9, 1968) (the *"White* action"), which had been dismissed for failure to answer interrogatories. Judge Wyatt on November 17, 1971 denied defendants' motion for summary judgment, 333 F. Supp. 1084, but granted the necessary certification to appeal pursuant to 28 U.S.C. § 1292(b) (1970), as did we on December 6, 1971. For the reasons stated below, we affirm the denial of the motion for summary judgment.

I.

The *White* action was a consolidation of two separate stockholders' derivative actions, the first commenced in January of 1967 and the second in February of 1968. As the district court found, "[i]t is undisputed that the claims in the White action are the same as those now asserted in the case at bar." 333 F. Supp. at 1085. There is no suggestion, however, that the *White* plaintiffs or their attorneys are in any way connected with the instant case.

On January 14, 1969, the district court entered orders directing the *White* plaintiffs to answer interrogatories on February 15, 1969, which date was extended to March 4, 1969. The interrogatories ordered to be answered requested the *White* plaintiffs to specify the claimed violations of law and sought details as to each claimed violation. On March 31, 1970, more than a year after the deadline for answering the interrogatories, the *White* plaintiffs filed their answers. The defendants considered these unsigned and unverified answers to be unacceptable and returned them to plaintiffs. Thereafter, on December 10, 1970, the *White* plaintiffs served by mail purported answers to the interrogatories. The defendants also found these responses to be inadequate.

On February 3, 1971, the *White* defendants brought on by order to show cause a motion pursuant to Fed.R.Civ. P. 37(b)(2)(C) seeking dismissal of the action on the ground of the plaintiffs' failure to answer the interrogatories as required by the district court's order of January 14, 1969.[2] The *White* plaintiffs opposed the granting of this motion.

1. §§ 1(b)(2), 2(a)(3), 2(a)(9), 10, 15, 17(e), (h) and (i), 36 and 37 of the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1(b)(2), 80a–2(a)(3), 80a–2(a)(9), 80a–10, 80a–15, 80a–17(e), (h) and (i), 80a–35 and 80a–36 (1970); §§ 10(b) and 15(c)(1) and (2) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j and 78o(c)(1) and (2) (1970); and § 206(4) of the Investment

Advisers Act of 1940, 15 U.S.C. § 80b–6 (4) (1970).

2. Fed.R.Civ.P. 37(b)(2)(C) provides as follows:
"If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or

Judge Wyatt referred the motion to a Special Master. The Master concluded that plaintiffs' long delayed answers to the interrogatories were "totally inadequate" and that "[t]he deficiency of the answers to interrogatories and the delay in serving them demonstrates that plaintiffs are not serious in prosecuting this action." Accordingly, the Master recommended that the *White* action be dismissed.

On March 16, 1971, Judge Wyatt entered an order granting defendants' motion and dismissing the action as to all defendants served other than the nominal defendant, Affiliated. Notice of the dismissal was not given to nonparty stockholders. On March 22, 1971, a judgment was entered dismissing the action as to the moving defendants, which judgment was amended by endorsement on March 30, 1971 to include both plaintiffs. Neither the judgment nor the orders provided that the dismissal was without prejudice.

As a result of the judgment, there continued pending on the district court's docket a derivative action in which Affiliated, the nominal defendant, was the only remaining defendant which had been served. On June 12, 1971, Chief

Judge Sugarman entered a routine calendar order of dismissal, stated to be without prejudice.

Plaintiff Papilsky filed her complaint in the instant action on June 7, 1971.[3]

## II.

■ It is now well established that Fed.R.Civ.P. 41(b) states the effect to be accorded a dismissal under Fed.R. Civ.P. 37.[4] Stebbins v. State Farm Mutual Automobile Insurance Co., 413 F.2d 1100, 1102 (D.C.Cir.), cert. denied, 396 U.S. 895 (1969); Nasser v. Isthmian Lines, 331 F.2d 124, 127 (2 Cir. 1964). Rule 41(b) provides in relevant part:

> "Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."

The order and judgment dismissing the *White* action were not stated to be without prejudice. A strict application of Rule 41(b) would seem to require a holding that the dismissal of the *White* action operated as an adjudication upon

permit discovery, including an order made under subdivision (a) of this rule or Rule 35, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

\* \* \*

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party."

3. On June 4, 1971, three days before Papilsky filed her complaint, the First Circuit held that claims similar to those asserted in Papilsky's complaint did constitute violations of the Investment Company Act of 1940. Moses v. Burgin, 445 F.2d 369 (1 Cir.), cert. denied sub nom. Johnson v. Moses, 404 U.S. 994 (1971). The First Circuit thereby reversed in part a district court judgment of August 18, 1970 which had dismissed on the merits a deriv-

ative suit brought on behalf of a mutual fund involving claims similar to those asserted in *White*. Moses v. Burgin, 316 F. Supp. 31 (D.Mass.1970). In opposing the *White* defendants' motion for dismissal pursuant to Rule 37(b)(2)(C), the *White* plaintiffs tried to excuse their delay in answering the interrogatories by arguing that it was reasonable for them to wait for the First Circuit's decision in *Moses* before framing their answers to the interrogatories.

4. There is nothing to the contrary in Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 207 (1958). There the Court merely indicated that the standards for granting or denying a motion to dismiss for failure to comply with discovery orders are governed by Rule 37, not Rule 41(b). That opinion did not suggest, however, that the effect of a Rule 37 dismissal was not to be determined by Rule 41. .

the merits and hence as a bar to the present derivative suit. Indeed, the Supreme Court has made it more than clear in dicta that dismissals coming within the literal terms of Rule 41(b) generally do have *res judicata* effect. Costello v. United States, 365 U.S. 265, 286 (1961). Moreover, we have held that a dismissal pursuant to Rule 37 for failure to answer interrogatories is an adjudication upon the merits and bars an identical cause of action asserted in a subsequent suit. Nasser v. Isthmian Lines, *supra*, 331 F.2d at 128. *Nasser*, however, was neither a class action nor a stockholder's derivative action. Rather, *Nasser* involved a plaintiff asserting a cause of action which belonged solely to him as an individual. Papilsky strongly urges that a different result is required where the plaintiff is a stockholder suing on behalf of a corporation.

The district court agreed with Papilsky and refused to accord *res judicata* effect to the judgment dismissing the *White* action. The court stated:

> "The derivative suit contains two claims: (1) a claim by the corporation in which plaintiff is a stockholder and (2) a claim by the stockholder against his corporation for its failure to enforce the claim belonging to it ((1) above)." 333 F.Supp. at 1087.

While conceding that Rule 41(b) applies to dismissals under Rule 37, the court concluded that the dismissal of the *White* action barred only the claim of the *White* plaintiffs against Affiliated, and not Affiliated's cause of action against the defendants.

### III.

While we agree with the district court's holding that the judgment in the *White* action is not binding on nonparty stockholders, we do so without accepting the court's analysis of the nature of a stockholder's derivative action.

■■ A stockholder's derivative action is a suit to enforce a corporate cause of action against officers, directors or third parties. Such an action

consists of only one claim—the corporate claim against the alleged wrongdoers. The alleged injury inflicted upon the corporation is regarded as affecting only the corporation. The fact that the injury may indirectly harm a stockholder by diminishing the value of his corporate shares does not bestow upon him a right to sue on his own behalf to recover damages. Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 732 (3 Cir. 1970), cert. denied, 401 U.S. 974 (1971); Hodge v. Meyer, 252 Fed. 479, 483 (2 Cir.), cert. denied, 248 U.S. 565 (1918). See also McLaughlin, Capacity of Plaintiff-Stockholder to Terminate a Stockholder's Suit, 46 Yale L.J. 421 n. 2 (1936). Rather, assuming that a stockholder has satisfied the prerequisites of Fed.R.Civ. P. 23.1, he merely has a right to bring a derivative action on behalf of the corporation. As Justice Frankfurter stated in his dissenting opinion in Smith v. Sperling, 354 U.S. 91, 99 (1957):

> "The contrasting difference between a stockholder's suit for his corporation and a suit by him against it, is crucial. In the former, he has no claim of his own; he merely has a personal controversy with his corporation regarding the business wisdom or legal basis for the latter's assertion of a claim against third parties. Whatever money or property is to be recovered would go to the corporation, not a fraction of it to the stockholder. When such a suit is entertained, the stockholder is in effect allowed to conscript the corporation as a complainant on a claim that the corporation, in the exercise of what it asserts to be its uncoerced discretion, is unwilling to initiate."

Accord, Kauffman v. Dreyfus Fund, Inc., *supra*, 434 F.2d at 734–35. This right "to conscript the corporation as a complainant" cannot be equated with a cause of action against the corporation. A corporation cannot be held liable to a plaintiff-stockholder for failing to prosecute an allegedly valid corporate claim. Rather than initiating a cause of action against the corporation, the plaintiff-

stockholder in a derivative suit is seeking to enforce, for the benefit of the corporation, a corporate claim which the corporation, for whatever reason, is unwilling to prosecute.

The district court's reliance on Ross v. Bernhard, 396 U.S. 531 (1970), for the proposition that a stockholder's derivative suit consists of two claims, is misplaced. There the Court merely recognized "the dual nature of the stockholder's action: first, the plaintiff's right to sue on behalf of the corporation and, second, the merits of the corporation's claim itself." 396 U.S. at 534–35. There is nothing in the opinion which elevates a stockholder's right to sue on behalf of the corporation to the level of a stockholder's claim against the corporation for failure to enforce a corporate cause of action. To the contrary, the Court's analysis of the nature of a stockholder's derivative suit is entirely consistent with our conclusion that such an action consists of only one claim—the corporate claim:

> "The claim pressed by the stockholder against directors or third parties 'is not his own but the corporation's.' Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 522 (1947). The corporation is a necessary party to the action; without it the case cannot proceed. Although named a defendant, it is the real party in interest, the stockholder being at best the nominal plaintiff. The proceeds of the action belong to the corporation and it is bound by the result of the suit. The heart

of the action is the corporate claim." 396 U.S. at 538–39.

Accordingly, the district court's dismissal of the *White* action encompassed the corporate claim which a different stockholder is now asserting in the present derivative suit. The question which we must now consider is whether the judgment in the *White* action should be given *res judicata* effect, even though notice of the proposed dismissal of the *White* action was not given to nonparty stockholders.

## IV.

■■ We hold that, when notice of a proposed dismissal of a stockholder's derivative suit for failure to answer interrogatories is not given to nonparty stockholders, the judgment of dismissal does not bar an identical cause of action asserted by a different stockholder in a subsequent derivative suit. As previously indicated, the order and judgment dismissing the *White* action were not stated to be without prejudice and hence the effect of the dismissal normally would be to preclude the initiation of a suit based on the same cause of action. See Costello v. United States, *supra*, 365 U.S. at 286; Nasser v. Isthmian Lines, *supra*, 331 F.2d at 128. Accordingly, our decision in this case carves out an exception to the general principles of Rule 41(b) for derivative suits dismissed for failure to answer interrogatories.[5] While we have been unable to find a case precisely in point,[6] princi-

---

5. Appellants contend that Saylor v. Lindsley, 391 F.2d 965 (2 Cir. 1968), indicated that no such exception should be created. That case involved the effect to be given a derivative action dismissed for failure to post a security bond. This Court refused to accord *res judicata* effect to the judgment of dismissal, as the stockholder had merely failed to satisfy a precondition for bringing the suit. 391 F.2d at 969. Cf. Costello v. United States, *supra*, 365 U.S. at 286. In dictum, we did say:

> "Although neglect to prosecute would normally provide an appropriate occasion for the invocation of Rule 41(b) . . . . ." 391 F.2d at 969.

This dictum is not necessarily inconsistent with our decision today. We agree that dismissal for failure to prosecute, when not stated to be without prejudice, would normally preclude the bringing of another suit based on the same cause of action. Assuming that a dismissal for failure to prosecute should be treated the same as a dismissal for failure to answer interrogatories, our decision simply carves out an exception to the general rule in the case of a stockholder's derivative suit.

6. The able District Judge below indicated that he was "inclined to believe that notice to shareholders was required in connection with dismissal of the White

ples enunciated in analogous situations do lend support to our holding. In short, our decision today marks no new departure in the law.

 Courts traditionally have exhibited understandable caution in according *res judicata* effect to a prior derivative action in which the present plaintiff-stockholder did not participate. Such caution is warranted in the context of derivative actions in view of the fact that the plaintiff-stockholder is affecting a right which belongs to the corporation. To discourage the plaintiff from sacrificing the corporate cause of action to further his own self interest, notice to nonparty stockholders of proposed dismissals is required in a variety of situations. Where notice is a prerequisite to a dismissal of a derivative action, a judgment of dismissal will not be accorded *res judicata* effect unless such notice was given. Winkelman v. General Motors Corp., 39 F.Supp. 826, 831 (S.D. N.Y.1940). *Cf.* Smith v. Alleghany

action." 333 F.Supp. at 1086–87. However, because of his view of the nature of a stockholder's derivative suit, he assumed for the purposes of his decison that notice was not required.

In an analogous situation, the Eighth Circuit has held that notice of a proposed dismissal of a class action for lack of prosecution was not required "under the circumstances [t]here presented." Partridge v. St. Louis Joint Stock Land Bank, 130 F.2d 281, 286 (8 Cir. 1942). The circumstances of that case were unusual, as the suit had been pending for nine years and no other members of the class had sought to intervene. Moreover, the *Partridge* decision said nothing about the effect to be given the dismissal in the event a subsequent suit were brought by a different member of the class. Furthermore, the *Partridge* decision has met with critical comment:

"This result can be criticized, however, since a failure to prosecute may reflect the fact that the representatives have lost interest in the suit because their own goals have been satisfied or for a number of reasons unrelated to the merits of the action or the rights of the other class members. Should this be the case, the representatives might refuse to pursue the action and not seek the court's approval of a dismissal, thereby intentionally or unintentionally evading

Corp., 394 F.2d 381, 391 (2 Cir.), cert. denied, 393 U.S. 939 (1968); Stella v. Kaiser, 218 F.2d 64, 65 (2 Cir. 1954), cert. denied, 350 U.S. 835 (1955).

 In general, notice of a proposed dismissal of a derivative suit must be given to nonparty stockholders when the corporate claim has not been adjudicated upon the merits. Fed.R.Civ.P. 23.-1. Rule 23.1 provides in relevant part that a stockholder's derivative action "shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs." [7] The notice requirements of Rule 23.1 have been construed to apply to more than just dismissals of derivative suits following settlements. It is clear, for example, that voluntary dismissals under Fed.R.Civ.P. 41(a)(1) are within the scope of the notice requirements of Rule 23.1.[8] 3B Moore's Federal Practice ¶ 23.1.24 [2] (1969);

the safeguards provided by subdivision (e) [notice and court approval]." 7A Wright & Miller, Federal Practice and Procedure 236 (1972).

7. Prior to 1966, the last sentence of Rule 23.1, which is quoted above, was covered by Rule 23(c). When stockholders' derivative suits were accorded separate treatment by the 1966 amendment, the notice and court approval prerequisites for derivative actions were preserved unchanged in Rule 23.1. Thus, cases involving derivative suits decided prior to 1966 are controlling for the purposes of applying the notice requirements of Rule 23.1. See 7A Wright & Miller, Federal Practice and Procedure 427 (1972).

8. As Professor Moore writes:

"Although voluntary dismissal by the plaintiff or by stipulation under Rule 41(a)(1) is expressly made subject to the provisions of Rule 23(e), and Rule 41(a)(1) fails to make a comparable exception for Rule 23.1 and Rule 23.2, this is an inadvertent omission. The specific requirement in Rule 23.1 for notice and court approval controls over the generality of Rule 41(a)(1) and must be observed in cases where it applies." 3 B Moore's Federal Practice ¶ 23.1.24 [2] (1969).

7A Wright & Miller, Federal Practice and Procedure 435 (1972). Moreover, in order to prevent simple evasion of the safeguards of the Rule 23.1 notice provisions, we have held that a plaintiff-stockholder's consent to the entry of summary judgment against him is analogous to a voluntary dismissal and triggers the notice requirements of Rule 23.-1. Certain-Teed Products Corp. v. Topping, 171 F.2d 241, 243 (2 Cir. 1948). See also Goldfarb v. Ehlers, CCH Fed. Sec.L.Rptr. ¶ 93,382 (E.D.N.Y.1972); Brendle v. Smith, 7 F.R.D. 119, 120 (S.D.N.Y.1946); Winkelman v. General Motors Corp., *supra*, 39 F.Supp. at 830–31.

■ There are cogent reasons for requiring notice of proposed voluntary dismissals and settlements of derivative actions. Notice is essential in these situations to ensure that the dismissal of the derivative suit is in the best interests of the corporation and the absent stockholders. See Norman v. McKee, 431 F.2d 769, 774 (9 Cir. 1970), cert. denied, 401 U.S. 912 (1971); Cohen v. Young, 127 F.2d 721, 726 (6 Cir. 1942), cert. denied, 321 U.S. 778 (1944). More specifically, notice and court approval of settlements under Rule 23.1 discourage private settlements under which the plaintiff-stockholder and his attorney profit to the exclusion of the corporation and nonparty stockholders. See Wolf v. Barkes, 348 F.2d 994, 996 (2 Cir.), cert. denied, 382 U.S. 941 (1965); Birnbaum v. Birrell, 17 F.R.D. 409, 411 (S.D.N.Y. 1955); Craftsman Finance & Mortgage Co., Inc. v. Brown, 64 F.Supp. 168, 178 (S.D.N.Y.1945). Without the requirements of notice and court approval, there would be a greater incentive for stockholders to bring strike suits, and it would be easier for alleged wrongdoers to "buy off" the corporation's representative. Moreover, the notice provisions of Rule 23.1 have been interpreted to apply to a voluntary dismissal and to a dismissal following consent to the entry of summary judgment in order to prevent such dismissals from being a cloak for a collusive settlement between the plaintiff-stockholder and the defendants. See 7A Wright & Miller, Federal Practice and Procedure 435 (1972).

■ Aside from limiting the opportunities for collusion, there are persuasive reasons for requiring notice to nonparty stockholders of a proposed voluntary dismissal. Assuming that the plaintiff-stockholder is attempting to enforce a valid corporate claim, the Rule 23.1 safeguards will protect the corporation and absent stockholders from a plaintiff who becomes "fainthearted" prior to the completion of litigation and wishes to settle the derivative suit even though such a disposition would not be in the best interests of the corporation. See Webster Eisenlohr, Inc. v. Kalodner, 145 F.2d 316, 320 (3 Cir. 1944), cert. denied, 325 U.S. 867 (1945); Marcus v. Textile Banking Co., 38 F.R.D. 185, 187 (S.D.N.Y.1965). Similarly, notice to nonparty stockholders of voluntary dismissals protects against prejudice to the corporation from discontinuance of a derivative suit after the plaintiff-stockholder has already secured an advantage or when the statute of limitations precludes the institution of a new suit. See McLaughlin, Capacity of Plaintiff-Stockholder to Terminate a Stockholder's Suit, 46 Yale L.J. 421, 428 (1936). In these situations, notice enables other stockholders to intervene to protect the corporate claim and to continue the litigation if that seems advisable.

The policy considerations which support requiring notice of a proposed voluntary dismissal are not applicable when the corporate claim is dismissed after a hearing on the merits. Litigation upon the merits substantially reduces the opportunities for collusion between the plaintiff-stockholder and the defendants. A contest upon the merits is presumed to indicate that the plaintiff-stockholder vigorously prosecuted the claim on behalf of the corporation. Accordingly, the Rule 23.1 notice provisions do not apply to dismissals following litigation upon the merits. See Daugherty v. Ball, 43 F.R.D. 329, 335 (C.D.Calif.1967); 3B Moore's Federal Practice ¶ 23.1.24 [2].

(1969); 7A Wright & Miller, Federal Practice and Procedure 436 (1972). See also Pelelas v. Caterpillar Tractor Co., 113 F.2d 629, 633 (7 Cir.), cert. denied, 311 U.S. 700 (1940) (class action); Hutchinson v. Fidelity Inv. Ass'n., 106 F.2d 431, 436 (4 Cir. 1939) (class action); Dolgow v. Anderson, 53 F.R.D. 664, 690 (E.D.N.Y.1971), aff'd, 464 F.2d 437 (2 Cir. 1972) (class action). Even without notice, a dismissal after a hearing on the merits is a binding adjudication of the corporate claim and precludes non-party stockholders from bringing a subsequent derivative suit based on the same cause of action. Ratner v. Paramount Pictures, Inc., 6 F.R.D. 618, 619–20 (S.D.N.Y.1942).

A dismissal for failure to answer interrogatories cannot accurately be characterized as either a voluntary dismissal or a dismissal following a hearing on the merits. True, it has some attributes of a dismissal following litigation upon the merits. The plaintiff-stockholder does oppose the dismissal.[9] Moreover, as there is no initial bar to reaching the merits, the defendants may be put to the inconvenience of preparing to defend on the merits. See Costello v. United States, *supra*, 365 U.S. at 286. Furthermore, dismissals for failure to answer interrogatories are based in part upon the presumption that the plaintiff's alleged cause of action is without merit. See Hammond Packing Co. v. Arkansas, 212 U.S. 322, 349–54 (1909). Nevertheless, on balance, we believe that dismissals of derivative suits for failure to answer interrogatories are more analogous to voluntary dismissals. Thus, if prior dismissals for failure to comply with discovery orders are to be given *res judica-*

*ta* effect, notice of the proposed dismissal must be given to nonparty stockholders.

The policy considerations which compel the giving of notice prior to voluntary dismissals are equally applicable to dismissals for failure to answer interrogatories. Similar to the reasons for extending the notice provisions of Rule 23.1 to a dismissal following consent to the entry of summary judgment, a dismissal for failure to answer interrogatories could easily disguise a collusive settlement.[10] To permit dismissal without notice for failure to comply with a discovery order would provide a simple technique whereby fraudulent directors or officers could avoid future liability by having a compliant stockholder sue and withdraw at an appropriate moment. Moreover, notice of a proposed dismissal for failure to answer interrogatories will protect the corporation and absent stockholders from a plaintiff-stockholder who, for reasons unrelated to the merits of the corporate claim, chooses not to comply fully with a discovery order. For example, it must be remembered that a plaintiff-stockholder generally finances the prosecution of the derivative suit out of his own pocket and will not be reimbursed unless successful. Such a person may decide that the financial risk is too great to justify expending large sums of money to supply complete answers to interrogatories. Requiring notice under Rule 23.1 in these situations affords nonparty stockholders an opportunity to intervene to prosecute the suit to its completion.

Even aside from the Rule 23.1 notice provisions, there is an additional reason for our reluctance to accord *res judicata* effect to the judgment in the

---

9. Of course, if the *White* plaintiffs had consented to the dismissal for failure to answer interrogatories, the dismissal would have been voluntary and notice clearly would have been required. See Certain-Teed Products Corp. v. Topping, *supra*, 171 F.2d at 243; Winkelman v. General Motors Corp., *supra*, 39 F.Supp. at 830–31. Here the *White* plaintiffs did not consent to the dismissal.

10. We do not suggest that in the instant case there was any collusion between the *White* plaintiffs and the defendants. The district court specifically noted: "There is not the slightest suggestion of any impropriety in the motions to dismiss and in the dismissal of the White action; the Court at the time was fully advised in the premises." 333 F.Supp. at 1087.

*White* action. If we were to apply the general principles of Rule 41(b) and hence to bar the present suit, a serious due process question would arise. The rationale for binding nonparty stockholders by a judgment in a derivative action is that a plaintiff-stockholder represented their interests in that litigation. If nonparty stockholders are to be conclusively bound by the results of an action prosecuted by a stockholder ostensibly representing their interests, however, fundamental considerations of fairness and justice demand that the representation be adequate. Cf. Hansberry v. Lee, 311 U.S. 32, 44–46 (1940). One of the principal criteria for adequacy of representation is that the representation must be of such character as to insure the vigorous prosecution of the claim. Cf. Eisen v. Carlisle & Jacquelin, 391 F. 2d 555, 562–63 (2 Cir. 1968) (class action); Fogel v. Wolfgang, 47 F.R.D. 213, 216 (S.D.N.Y.1969) (class action); Dolgow v. Anderson, 43 F.R.D. 472, 494 (E.D.N.Y.1968), rev'd on other grounds, 438 F.2d 825 (2 Cir. 1970) (class action). As the court said in Mersay v. First Republic Corp. of America, 43 F. R.D. 465, 470 (S.D.N.Y.1968) (class action):

"[T]he primary criterion is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class, so as to insure them due process."

The fact that the *White* action was dismissed for failure to answer interrogatories raises some doubt as to whether the *White* plaintiffs provided the type of representation necessary to satisfy the dictates of due process. The uncertainty about the adequacy of the representation is increased somewhat by the Special Master's conclusion that the *White* plaintiffs were "not serious in prosecuting this action . . ." and by the First Circuit's decision in Moses v. Burgin, *supra*, note 3, which held that claims similar to those asserted in the *White* action could constitute violations of the Investment Company Act of 1940. Since we hold that failure to give notice to nonparty stockholders precludes according *res judicata* effect to the *White* action, we do not have to decide whether the *White* plaintiffs failed to provide adequate representation.

Affirmed.