UNITED STATES of America,
Plaintiff-Appellee,

v.

$149,345 UNITED STATES
CURRENCY, Defendant,

Andres Alonso, Jr.,
Intervenor-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

$149,345 UNITED STATES
CURRENCY, Defendant,

Joan Celia Lavine,
Intervenor-Counterclaimant-Appellant.

UNITED STATES of America,
Plaintiff/Appellee,

v.

$149,345 UNITED STATES
CURRENCY, Defendant,

Andres Alonso, Jr.,
Intervenor/Appellant.

Nos. 83–5707, 83–5881 and 83–6303.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 2, 1984.

Decided Nov. 20, 1984.

Kilkenny, Circuit Judge, filed specially concurring opinion.

Stephen D. Petersen, Los Angeles, Cal., for plaintiff-appellee.

Andres Alonso, Jr., Joan C. Lavine, Los Angeles, Cal., for intervenor-appellant.

Before KILKENNY, HUG and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Andres Alonso, Jr., and Joan C. Lavine, acting on her own behalf and for the estate of Morris Lavine, appeal dismissal of their claims for funds seized under 21 U.S.C. § 881(a)(6) as alleged drug proceeds. Both Alonso and Lavine are attorneys. They claimed the currency was payment for legal fees but refused to identify their clients on grounds of the attorney-client privilege. The district court struck the claims as a sanction under Fed.R.Civ.P. 37 for failure to respond to discovery as to their clients' identity and dismissed the Lavines' $5,000 counterclaim against the United States as beyond the court's jurisdiction.

Because a prior suit by Alonso was dismissed as a sanction for failure to comply with an order to identify his client, we affirm the dismissal based on res judicata.

### FACTS

#### A. *The Instant Cases*

Federal narcotics agents on duty at Los Angeles International Airport (LAX) on February 12, 1982, became suspicious of Nelson Valencia, a passenger arriving from Florida. The agents approached Valencia and obtained his consent to search his briefcase. Within the briefcase the agents found two envelopes with inscriptions in Spanish indicating they were for delivery to Attorney Alonso. Valencia permitted the agents to open the envelopes; inside was the subject currency.

Valencia claimed he had been hired by two unknown men in a Miami bar to deliver "some papers" to Los Angeles. The men gave Valencia $800 cash to buy an airline ticket and instructed him to telephone Alonso when he arrived to arrange delivery.

An agent, pretending to be Valencia, telephoned Alonso and asked him to come to LAX, where he was met by the drug agents. Alonso told the agents that the money was a retainer from a client and stated that it could be any amount from $100,000 to $650,000. Alonso refused to identify the client on grounds of attorney-client privilege. The agents seized the currency. They noted that forty-seven bills had numbers written on them, seven had names and two had baggage tag numbers. In the agents' opinions, these markings might be records of drug transactions.

This is the second time that the court has reviewed the seizure of this currency. Alonso earlier sought return of the seized currency in a civil suit. *Alonso v. United States*, No. CV 82–0898–FW (C.D.Cal. Oct. 29, 1982), *aff'd*, 718 F.2d 1109 (9th Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 3509, 82 L.Ed.2d 819 (1984) (hereinafter *Alonso I*). In *Alonso I*, Alonso refused to divulge his client's identity, arguing that the identity was privileged because disclosure could result in prosecution of the client on the very matter for which he had sought advice. Judge Whelan, the same judge as in the instant action, held an in camera hearing, determined that the client's identity was not privileged, found the identity material to Alonso's claim for the money, and ordered Alonso to submit to discovery. Alonso refused, and the court dismissed his complaint as a sanction.

The government instituted this forfeiture action (hereinafter *Alonso II*) on May 21, 1982, while the appeal in *Alonso I* was

pending. On August 4, Alonso filed a verified claim for the money. On September 7, Joan Lavine, alleging an interest in the currency on her own behalf and for the estate of Morris Lavine, filed an unverified answer and a counterclaim for $5,000 damages. On September 22, the United States Attorney requested Lavine to file a verified claim for the currency "by the end of this month." Lavine submitted a handwritten verified claim on September 30, alleging that she and Morris Lavine had an agreement with Alonso to provide legal services to Alonso's clients and that in return, the Lavines were to receive one-fourth of the seized currency.

Alonso and Lavine again refused to divulge the identity of their client, and Alonso stated that he would continue to so refuse until the Ninth Circuit had ruled on his appeal in *Alonso I.* The district court declined to hold an in camera hearing on the privilege question. Instead, the court struck Alonso's claim and Lavine's answer as a sanction under Fed.R.Civ.P. 37, without issuing an order compelling disclosure, and entered judgment for the United States. The court also held that the Lavines had failed to file a proper claim under Supp.R.Civ.P. C(6), that the Lavines had no interest in the currency, and that the court lacked jurisdiction to consider the Lavines' counterclaim. Alonso and Lavine took this appeal from the district court's decision, and while this appeal was pending, another panel of this circuit affirmed the district court in *Alonso I.* The panel reexamined the in camera items, and agreed with the trial court that Alonso had not shown his client's identity was privileged.

## DISCUSSION

### I. *Alonso Appeal*

#### A. *Dismissal Without an Order to Disclose*

The trial judge in *Alonso II* took judicial notice of Alonso's earlier civil suit, and offered the following rationale for dismissing Alonso's claim and answer in the forfeiture suit:

In order to contest a forfeiture, a claimant must satisfy the threshold requirement that he have an interest in the seized property. The facts demonstrate that Andres Alonso, Jr. has failed to establish any interest in the property and has no standing in this action. Moreover, his refusal to submit to discovery on the question of whether he has an ownership interest reinforces the conclusion he has no interest in the property and affords an independent basis for striking his Answer and Claim as a sanction under Rule 37, Fed.R.Civ.P. It was not necessary for the plaintiff to bring a motion to compel discovery pursuant to that rule in light of Andres Alonso, Jr.'s refusal to answer in *Alonso v. United States, et al.* and his declared intention in this case.

The court refused to hold an in camera hearing requested by Alonso to justify his assertion of attorney-client privilege, and did not issue an order to compel discovery. *See* Fed.R.Civ.P. 37(a).

 We must affirm the trial judge's decision for any valid reason, even if not relied upon by him. *Keniston v. Roberts,* 717 F.2d 1295, 1300 and n. 3 (9th Cir.1983). The trial judge was correct in dismissing Alonso's claim without an order to compel, because of the res judicata effects of *Alonso I.* The sanction dismissal in *Alonso I* is a judgment on the merits within the meaning of Fed.R.Civ.P. 41(b), and operates as res judicata to bar a second suit. *Wyle v. R.J. Reynolds Industries, Inc.,* 709 F.2d 585, 592 (9th Cir.1983); *Bierman v. Tampa Electric Co.,* 604 F.2d 929, 930–31 (5th Cir.1979); *Papilsky v. Berndt,* 466 F.2d 251, 254 (2d Cir.), *cert. denied,* 409 U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665 (1972); *see Costello v. United States,* 365 U.S. 265, 285–87, 81 S.Ct. 534, 544–46, 5 L.Ed.2d 551 (1961). Because Alonso's claim in *Alonso II* was essentially the same claim on which he lost in *Alonso I,* his claim was properly dismissed.

Nevertheless, we believe that the facts of this case compel us to pursue our analysis one step further. Alonso was faced

with an uncomfortable dilemma when the district court dismissed his claim in *Alonso I.* He had the right to appeal to secure a definitive ruling on his privilege claim, which does not appear on its face to be frivolous. *See United States v. Liebman,* 742 F.2d 807 (3d Cir.1984) (upholding attorney's refusal to disclose client's name on privilege grounds, when so much of the attorney-client relationship was already known to the government that identity alone might have incriminated client). By appealing the sanction dismissal, however, he gave up the right to proceed on the merits if he lost. Alternatively, he could have disclosed his client's identity and proceeded on the merits, thus giving up the privilege claim and possibly exposing his client to criminal liability. In effect, the Hobson's choice with which he was presented denied him the right to try the case on the merits, unless he foreswore what he saw as his duty to his client. *Cf. Luben Industries, Inc. v. United States,* 707 F.2d 1037, 1040 (9th Cir.1983) (refusing to give collateral estoppel effect to nonappealable interlocutory memorandum).

While Alonso's appeal of the sanction dismissal in *Alonso I* was pending the government brought this forfeiture action in the district court. This placed Alonso in the position of either being dismissed from the forfeiture case, or disclosing his client's identity and thus abandoning his appeal in *Alonso I.* Under these circumstances, we believe that while the district court's actions were correct, it is only fair that Alonso, if he is now willing to disclose his client's identity, should have an opportunity to move under Fed.R.Civ.P. 60(b)[1] to vacate the judgment in *Alonso I,* which could clear the way for him to proceed on the merits here. The District of Columbia Circuit, in like circumstances, has endorsed a similar procedure. *Stebbins v. State*

*Farm Mutual Automobile Insurance Co.,* 413 F.2d 1100, 1102 (D.C.Cir.), *cert. denied,* 396 U.S. 895, 90 S.Ct. 194, 24 L.Ed.2d 173 (1969).

In *Stebbins,* the plaintiff brought a Title VII employment discrimination suit against State Farm. An earlier action (*Stebbins I*) had been dismissed in the district court as a Rule 37(d) sanction. The appeal from *Stebbins I* was dismissed with the suggestion that Stebbins apply to the district court for an order to vacate the dismissal. The district court denied that motion. *Id.* at 1102.

On appeal in *Stebbins II,* the court noted that Stebbins had had the opportunity to make a motion to vacate, and had done so. *Id.* The district court properly denied the motion, however, on the grounds that Stebbins' original refusal to answer interrogatories was "intentional, willful, and contemptuous of the court." *Id.* at 1102 n. 5. The appellate court in *Stebbins II* then held that the first suit was res judicata and barred the second suit.

We believe that the *Stebbins* procedure, suggesting that the sanctioned party be permitted to file a motion for vacation of the first judgment, is the proper procedure to follow here. The procedure is particularly apposite when, as in this case, the sanction of dismissal in the first suit may have resulted from a good faith claim of privilege.

Therefore, we affirm without prejudice to Alonso's moving the district court to vacate the judgment in *Alonso I* under Fed.R.Civ.P. 60(b). If he is successful, he may then move to vacate the judgment in this case under Rule 60(b)(5), on the ground that the prior judgment on which it is based has been vacated. We do not intend to express any views as to whether such

---

1. Fed.R.Civ.P. 60(b) provides in pertinent part: On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or other-

wise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

motions should be granted in the event that they are filed.

## II. *Lavine Appeal*

As with Alonso, the district court struck the Lavines' answer and counterclaim without issuing an order compelling discovery. Because Lavine's claim is derived from Alonso's we affirm for the reasons discussed above, and suggest that Lavine move the district court to vacate this judgment if Alonso is successful in his motion to vacate *Alonso I.* Because of this possibility, we address the district court's other grounds for dismissal of Lavine's claim. The court offered several other reasons for its action: (1) the Lavines failed to file a proper claim for the currency under Rule C(6), Supplemental Rules for Certain Admiralty and Maritime Claims,[2] (2) Morris Lavine's estate had no interest in the funds because he assigned his interest to Joan Lavine, (3) Morris Lavine had no interest in the funds at the time of his assignment to Joan Lavine, and (4) the counterclaim was outside the jurisdiction of the court. We consider the first three of these grounds inadequate justification for dismissal of the Lavines' claim. We affirm, however, the court's dismissal of the counterclaim.

■ The record contains a handwritten verified claim for the currency signed by Joan Lavine, bearing a stamp of the United States Attorney's Office showing receipt on September 30, 1982. Although the claim was untimely, the district court had discretion under Rule C(6) to grant additional time for the Lavines to file. There is no indication that the court considered whether the Lavines were entitled to additional time. Several factors, however, weigh in the Lavines' favor. First, it is unclear from the record precisely when the Lavines became aware of the currency's seizure. The Lavines contend that the government's complaint was left in their mailbox on August 16. Second, the United States Attorney may have encouraged the delay. The Attorney sent the Lavines a letter dated September 22 asking the Lavines to file their claim "by the end of this month." Finally, Morris Lavine's illness and death during this period also may have caused the Lavines' delay in filing. While we do not decide the issue, we believe that the district court should consider these factors in determining whether the Lavines' claim was timely.

■ Morris Lavine's interest in the currency, and the effectiveness of his assignment to Joan Lavine,[3] are factual issues that properly should be determined after an evidentiary hearing. The record contains a document signed by Alonso that appears to be an agreement that Alonso would pay Morris Lavine a portion of the seized currency. Although this document is somewhat ambiguous, testimony by Alonso or others might establish the nature of the agreement and Morris Lavine's interest in the currency, if any.

■ Even if the Lavines could contest the seizure, however, the district court properly dismissed the counterclaim for damages. There is no statutory basis for such an action. It cannot be construed as a *Bivens* action because only the United States, rather than an individual agent, is named as counterdefendant. *See Bivens v.*

---

**2.** 21 U.S.C. § 881(b) provides in part:

Any property subject to forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property ...

Supplemental Rule C governs maritime actions in rem and analogous forfeiture actions. Rule C(6) provides:

(6) Claim and Answer, Interrogatories. The claimant of property that is the subject of an action in rem shall file his claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve his answer within 20 days after the filing of the claim. The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which claimant demands its restitution and the right to defend the action.

**3.** The parties have not raised the issue of whether a contract for personal legal services is assignable.

*Six Unknown Named Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The counterclaim also falls outside the Federal Tort Claims Act because the alleged injury arises from the detention of the money itself and the propriety of the detention is at issue. 28 U.S.C. § 2680(c) excludes from coverage of the Federal Tort Claims Act claims for detention of goods or merchandise by law enforcement officers. *See A-Mark, Inc. v. United States Secret Service,* 593 F.2d 849, 850 (9th Cir.1978) (per curiam). Contrary to the Lavines' assertions, there appears to be no valid reason to treat a seizure of money differently from goods. The apparent intent of section 2680(c) is to limit governmental liability for improper seizures and to restrict claimants to the statutory procedures of the forfeiture laws. *A-Mark,* 593 F.2d at 850. These aims are just as important for seizures of currency as for merchandise.

### CONCLUSION

Dismissal of Alonso's and the Lavines' claims was proper because of the res judicata effect of the judgment in *Alonso I.* We also affirm dismissal of the Lavines' counterclaim for damages as outside the jurisdiction of the court.

The decision of the district court is

AFFIRMED.

KILKENNY, Circuit Judge, specially concurring:

I fully concur in the majority's opinion with the exception of the suggestion of a remand of the Alonso case for the possibility of filing a Rule 60(b) motion. Such a motion is not available to relitigate issues that have already been decided. *Liberty Mut. Ins. Co. v. EEOC,* 691 F.2d 438, 441 (CA9 1982). *Cf., Beltran v. Myers,* 701 F.2d 91, 93 (CA9), *cert. denied* —— U.S. ——, 103 S.Ct. 3115, 77 L.Ed.2d 1369 (1983). Every issue mentioned by appellant has been previously disposed of. Possible other grounds for relief under such a motion are not argued or even touched upon by the appellant. Consequently, he should be foreclosed of trying to argue

such imaginary issues on a Rule 60(b) motion.

I would affirm without the remand.