**AMMOND, Alene S., in her capacity as a member of the Senate of New Jersey and individually, et al.**

v.

**Joseph L. McGAHN et al., Appellants.**

No. 75–1427.

United States Court of Appeals,
Third Circuit.
Argued Nov. 21, 1975.

Decided March 11, 1976.

David J. Goldberg, Warren, Goldberg & Berman, Trenton, N. J., for appellants.

William Tomar and Ronald A. Graziano, Tomar, Parks, Seliger, Simonoff & Adourian, Camden, N. J., for appellees.

Before VAN DUSEN, ADAMS and RO-SENN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

We are here presented with an appeal under 28 U.S.C. § 1292(a)(1) from the grant of a preliminary injunction, restraining and enjoining defendants from excluding Senator Alene S. Ammond from the New Jersey State Senate Democratic Conference ("Democratic Caucus"). We reverse for failure of the record to show imminent and irreparable harm to plaintiffs.

## I. FACTS

Ms. Ammond was elected to the New Jersey State Senate in November 1973 to represent the Sixth Senatorial District. She ran for office as a Democrat, after having won a Democratic primary race in her District. After assuming office in January 1974, she regularly attended the scheduled meetings of the Democratic Caucus. Several events occurred, starting in September 1974, which caused Senator Am-

mond to incur the displeasure of many of her colleagues in the Caucus. The first was the publication in Today Magazine of an article entitled "Terror of Trenton" (75a). Senator Ammond testified:

"They felt that it put them in a very bad light, and Senator Maressa from my neighboring county lead the caucus against me and said he felt that I was not to be trusted in the caucus, that I was not one of them. That I was not part of their group, and what were we going to do about it.

"At that particular time we had words, there was no formal censure, although there certainly were very hostile and strong feelings against me. . . ." (76a).

In late 1974 or early 1975, Senator Ammond overheard two conversations among her colleagues covering the State Commission of Investigation,[1] and she reported the substance of those conversations to the press because they "were so relevant to the public well-being . . . that I could not keep it quiet." *Id.* Several members of the Caucus were greatly displeased by her action. Another source of displeasure with Senator Ammond was her attack on the propriety of the Caucus hearing a delegation from Hudson County seeking to influence the Caucus' deliberations.[2]

On January 20, 1975, a resolution was introduced in the Caucus to exclude Senator Ammond. The discussion which followed became heated and Senator Ammond left, saying "I don't feel that I can discuss this issue with you in a rational manner, and when things calm down I would be very

---

1. Senator Ammond testified that one of the conversations took place in the "majority room"—apparently a room in the State House set aside for the use of legislators belonging to the majority political party—and the other conversation took place during a Democratic Caucus. App. at 76a–77a.

2. One member of the delegation was an attorney, Mr. Ruvolt, involved in litigation challenging the adequacy and equity of New Jersey's support of public education. The delegation came to discuss what formula should be adopted for a surtax then under consideration by the Caucus. Senator Ammond testified (80a):

" 'I have nothing against Mr. Ruvolt,' but I really resented him being brought in there. I felt it was a serious conflict. He had indeed announced that he was going to sue us and was the reason for the Botter decision, and I did not feel that Hudson County with the subtle influence that if you want to run for State Office you must have Hudson County on your side, otherwise you don't make it, and I felt there was a more than subtle pressure there, at which time I was told I had no right to say the things I said, so on and so forth."

happy to discuss the issue." App. at 82a. Senator Ammond next attempted to attend a Caucus meeting on January 27, but she was prevented from entering the meeting room by the Sergeant-at-Arms of the New Jersey State Senate, who informed her that she was temporarily ousted from the Caucus.

Almost immediately thereafter, Senator Ammond and several of her constituents filed the complaint, leading to the injunction challenged here, in the United States District Court for the District of New Jersey. Injunctive relief was sought under 42 U.S.C. §§ 1983 and 1985(3), and jurisdiction was claimed under 28 U.S.C. § 1343(3)[3] and (4). The gravamen of the complaint was that the acts of the defendants deprived the plaintiffs of rights secured to them by the United States Constitution.[4] On January 31, the district court issued a temporary restraining order directing the defendants not to exclude or bar Senator Ammond from entering into the Democratic Caucus. The district court further ordered that the defendants show cause why the plaintiffs' motion for a preliminary injunction should not be granted.

Some time after she left the Caucus meeting on January 20, an ad hoc committee concerning Senator Ammond was formed.[5] Senator Ammond testified that she was not afforded an opportunity to testify before the committee or in any other way contribute to its deliberations. App. at

85a. On February 10, 1975, the committee issued a report which contained the following language:

"In keeping with the concept of an informal atmosphere and an opportunity for a trusting exchange of tentative views, it is understandable that some feel there should be at least a minimum of personal acceptance and respect among the participants. Anyone who does not share that sense of minimum acceptance and respect may be concerned about taking part.

.        .        .        .        .

"On the other hand, we are concerned about the desirability of excluding any Senator from the party proceedings without first articulating the standards of personal conduct expected and according that Senator ample opportunity to respond to any demands that she or he be barred from such proceedings. We believe that every Senator should be accorded such an opportunity regardless of the requirements of the law.

"With regard to Senator Ammond, while we understand the provocation that led to the decision to exclude her temporarily from the conference, it is our opinion that she should no longer be excluded from party proceedings in the absence of stated standards and agreed procedures for taking such action. Because of the largely unprecedented nature of this mat-

---

**3.** Paragraph 15 of the complaint alleges that the defendants acted under color of state law in refusing Senator Ammond entry into the Democratic Caucus. Further, the district court found (43a–44a):

> "[The Caucus's] sessions are conducted in the State House on State property and attended by elected and appointed State officials; it is serviced by State paid employees, who include, among others, the sergeant-at-arms for the Senate, the Executive Director of the Senate Majority and its counsel; and notice of the Caucus meetings, by telegrams listing proposed legislative bills and other matters on the agenda, are paid by the State."

The foregoing support the district court's conclusion (44a) that action by the Caucus is "'state action'." See *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349–51, 95 S.Ct. 449,

452–54, 42 L.Ed.2d 477, 482–84 (1974); *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 723, 81 S.Ct. 856, 860, 6 L.Ed.2d 45, 51 (1961).

**4.** The complaint alleged that defendants' acts denied plaintiff Ammond her First Amendment right to freedom of speech, and her right to procedural due process guaranteed by the Fourteenth Amendment. Further, the complaint alleged that the plaintiff constituents were denied equal protection of the laws in that the exclusion of Senator Ammond deprived them of the benefit of fully effective and informed representation, and that they were deprived of a republican form of government guaranteed by Article IV, Section 4, of the Constitution.

**5.** The first meeting of the committee was held on January 27, 1975.

ter, no such written standards of procedures now exist.

"For this reason, this committee recommends to the membership of the Senate Democratic conference that Senator Ammond be permitted to return and participate. If this amounts to going the extra mile, it is nonetheless an effort we should make."

App. at 36a–37a.

The committee's recommendation that the Senator be allowed back in the Caucus was adopted by the full Caucus on February 10. App. at 33a. On February 11 plaintiffs amended their complaint to add a prayer for damages. The district court held a show cause hearing on February 18, and at the end of that hearing, the court announced that it would grant the plaintiffs' motion for a preliminary injunction.[6] The order granting the preliminary injunction was filed March 5, and defendants filed a notice of appeal on March 21.

## II. MOOTNESS

■ It has been suggested to us that the action of the Democratic Caucus in readmitting Senator Ammond renders this case moot, and therefore beyond the powers of the federal courts to consider. The rule that federal courts lack jurisdiction to consider the merits of a moot case "is a branch of the constitutional command that the judicial power extends only to cases and controversies." *Powell v. McCormack*, 395 U.S. 486, 496 n.7, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491, 502 (1969). The existence of plaintiffs' claim for damages[7] is clearly sufficient to make this action a case or controversy within the meaning of Article III of the Constitution. It does not matter that the damage claim might be said to be secondary or incidental to the claim for injunctive relief. *Powell v. McCormack, supra* at 499–500, 89 S.Ct. at 1952, 23 L.Ed.2d at 504. Though

the entire case is not moot, the question remains whether the issue of the appropriateness of injunctive relief is moot. If the parties lack a legally cognizable interest in the determination whether the preliminary injunction was properly granted, the sole question before us on this appeal, then we must vacate the district court's order and remand the case for consideration of the remaining issues.

■ In *United States v. W. T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303, 1309 (1953), a case involving an application for an injunction, the Supreme Court declared that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i. e., does not make the case moot." The Court went on to hold that the case may nevertheless be moot "if the defendant can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.' The burden is a heavy one." *Id.* at 633, 73 S.Ct. at 897, 97 L.Ed. at 1309. We believe that defendants in this case have not satisfied that burden. The report of the ad hoc committee, apparently approved by the Caucus, maintains that "the law in this state and nation supports a contention that the members of an informal conference have wide latitude in determining who shall be invited to confer." The report does not indicate that the exclusion of Senator Ammond will not be repeated; it states only that exclusion should not occur in the absence of established standards and procedures. In *W. T. Grant, supra*, the defendants had not only abandoned the challenged activities but also disclaimed any intention to revive them. The Court held: "Such a profession does not suffice to make a case moot although it is one of the factors to be considered in determining the appropriateness of granting an injunction against the now-discontinued acts." *Id.* at 633, 73 S.Ct. at 897, 97 L.Ed. at 1309.

---

6. The transcript of the district court's oral opinion is contained in Document 10, Civil No. 75–0163 (D.N.J.). A written opinion was filed by the district judge on March 5, 1975 (Document 11). The written opinion is reproduced at 39a.

7. The damage claim is not before the court of appeals at this time. Our jurisdiction under 28 U.S.C. § 1292(a)(1) is limited solely in this case to review of the district court's grant of a preliminary injunction.

## III. APPROPRIATENESS OF EQUITABLE RELIEF

Among the factors to be considered by a court before granting preliminary injunctive relief are whether the alleged injury is imminent,[8] whether that injury would be irreparable,[9] whether the plaintiff is likely to prevail after trial on the merits,[10] and the effect of granting or denying the preliminary injunction on the public interest. See *A. O. Smith Corp., et al. v. Federal Trade Commission, et al.,* 530 F.2d 515, at 525 (3d Cir. 1976); *Oburn v. Shapp,* 521 F.2d 142, 147 (3d Cir. 1975).

The Caucus voted to readmit Senator Ammond to the Caucus prior to the grant of the preliminary injunction. It is true that the defendants were under the compulsion of a temporary restraining order, but the readmission of Senator Ammond was not made conditional on the survival of the temporary restraining order or on the issuance of a preliminary injunction. Moreover, the ad hoc committee report, apparently adopted by the Caucus, expressly made future expulsions or suspensions from the Caucus conditional on the existence of established standards and procedures. There is no indication in the record that these standards and procedures had been established or were about to be established.[11] Thus, even if Senator Ammond would not refrain from reporting to her constituents as to what transpired in the Caucus and other levels of government, it is not clear, and far from imminent, that the Caucus would again exclude Senator Ammond before final hearing in this case and interfere with her alleged rights or the alleged rights of her constituents to a fully effective and informed representation. *See* note 4, *supra.* At this preliminary stage of the proceedings, especially when the legal rights of the respective parties are far from clear, and the ad hoc committee report indicates no further expulsion until standards and procedures are drafted and adopted, there is no clear showing of immediate irreparable injury. Under such circumstances, a court should not exercise the delicate power of injunctive relief. The grant of the preliminary injunction, therefore, must be reversed.

It is not necessary, therefore, to discuss issues bearing on the likelihood of success on the merits, including the possible conflict between the associational and political rights of the members of the Caucus, see *Cousins v. Wigoda,* 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595 (1975); *O'Brien v. Brown,* 409 U.S. 1, 92 S.Ct. 2718, 34 L.Ed.2d 1 (1972); *Ripon Society, Inc. v. National Republican Party,* 525 F.2d 567, 585 (D.C. Cir.1975) (en banc), and the constitutional rights of the plaintiffs, see *Bond v. Floyd,* 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966). Because our decision does not go to the merits of the controversy, plaintiffs will be free to seek preliminary, or final, if appropriate, injunctive relief in the event Senator Ammond is once again excluded from the Caucus, or conditions change in some other material respect.

The judgment will be reversed and the case remanded for further proceedings. Costs taxed against appellees.

---

**8.** See, *e. g., Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 254, 90 S.Ct. 1583, 1594, 26 L.Ed.2d 199, 212 (1970); *A.L.K. Corp. v. Columbia Pictures Industries, Inc.,* 440 F.2d 761, 763 (3d Cir. 1971); *Holiday Inns of America, Inc. v. B & B Corp.,* 409 F.2d 614, 618 (3d Cir. 1969).

**9.** See, *e. g., Boys Markets, supra,* 398 U.S. at 254, 90 S.Ct. at 1594, 26 L.Ed.2d at 212; *Oburn v. Shapp,* 521 F.2d 142, 147 (3d Cir. 1975).

**10.** See, *e. g., Oburn, supra* at 147; *Detroit Newspaper Pub. Ass'n v. Detroit Typo. Union,* 471 F.2d 872, 876 (6th Cir. 1972); O. Fiss, Injunctions, 168 (1972).

**11.** At oral argument we were told that no standards and procedures had yet been drawn up and that none were about to be drawn up.