JUDICE'S SUNSHINE PONTIAC, INC., a corporation of the State of Delaware, and P. John Judice, Plaintiffs,

v.

GENERAL MOTORS CORPORATION, a corporation of the State of Delaware, and General Motors Acceptance Corporation, a corporation of the State of Delaware, Defendants.

Civ. A. No. 75–1155.

United States District Court, D. New Jersey.

July 14, 1976.

---

Pickett & Jennings, by Robert T. Pickett, Newark, N. J., David Berger, P. A., Philadelphia, Pa., of counsel; by David Berger, Warren D. Mulloy, Stanley R. Wolfe, Warren Rubin, Philadelphia, Pa., for plaintiffs.

Carpenter, Bennett & Morrisey, by Thomas L. Morrisey, Newark, N. J., Frazer F. Hilder, Michael J. Basford, Detroit, Mich., Michael S. Waters, John F. Lynch, Jr., Newark, N. J., on the brief, for defendant General Motors Corp.

Morley, Cramer, Tansey & Haggerty, by Carroll A. Morley, Woodbridge, N. J., for defendant General Motors Acceptance Corp.

## FINDINGS OF FACT
## and
## CONCLUSIONS OF LAW

BROTMAN, District Judge.

Presently before the court is a motion for a preliminary injunction. This application arises in the context of an action by the plaintiffs, Judice's Sunshine Pontiac, Inc. (hereinafter "Sunshine Pontiac") and P. John Judice (hereinafter "Judice") against the defendants, General Motors Corporation (hereinafter "General Motors") and General Motors Acceptance Corporation (hereinafter "GMAC"). The Amended Complaint alleges causes of action under the Sherman Act, Section 1, 15 U.S.C. § 1,[1] the Robinson-Patman Act, 15 U.S.C. § 13,[2] the Automobile

---

1. 15 U.S.C. § 1 provides in pertinent part:

 Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal . . . .

2. 15 U.S.C. § 13(a) provides:

 It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: *Provided,* That nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered: *Provided, however,* That the Federal Trade Commission may, after due investigation and hearing to all interested parties, fix and establish quantity limits, and revise the same as it finds necessary, as to particular commodities or classes of commodities, where it finds that available purchasers in greater quantities are so few as to render differentials on account thereof unjustly discriminatory or promotive of monopoly in any line of commerce; and the foregoing shall then not be construed to permit differentials based on differences in quantities greater than those so fixed and established: *And provided further,* That nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade: *And pro-*

Dealers' Day-in-Court Act, 15 U.S.C. § 1222,[3] the New Jersey Antitrust Act, N.J.S.A. 56:9–3[4] and the common law. Plaintiffs seek treble damages,[5] costs and a reasonable attorney's fee under the federal and state antitrust laws.[6] Declaratory and injunctive relief is also sought.

Fundamentally this is an antitrust action alleging an unlawful conspiracy and combination to restrain trade between General Motors, GMAC and other co-conspirators.[7] Plaintiffs maintain that the overall intent and purpose of the conspiracy and combination was and is to: destroy Judice as a competitor of dealerships owned by General Motors and its co-conspirators; allocate geographic markets among General Motors and its co-conspirators; prevent price competition; and discourage minority group members, such as Judice, from seeking to obtain dealerships and from competing with existing dealers.[8]

No application to enjoin preliminarily the alleged illegal antitrust activities of General Motors is before the court. Rather, plaintiffs' application addresses itself primarily to certain procedural questions: namely, should this litigation continue and if so in whose control and at whose ex-

pense? Also involved is Judice's continued status as President of Sunshine Pontiac and as a member of its Board of Directors. Finally the application seeks to clarify the nature of Judice's continuing relationship with General Motors. Specifically plaintiffs' motion seeks to restrain General Motors and the Board of Directors from taking action to:

a. Remove plaintiff P. John Judice from the Board of Directors and as President and chief operating officer [of Sunshine Pontiac];

b. Interfere with the prosecution of this action including representation by existing counsel;

c. Refuse to pay the costs, including counsel fees, in connection with this litigation;

d. Override any decision made by plaintiff, P. John Judice, where said decision directly involves plaintiffs' relationship with General Motors.[9]

Affidavits have been filed in support of and in opposition to the application. Pursuant to Fed.R.Civ.P. 52(a) the court makes the following Findings of Fact and Conclusions of Law:

---

*vided further,* That nothing herein contained shall prevent price changes from time to time where in response to changing conditions affecting the market for or the marketability of the goods concerned, such as but not limited to actual or imminent deterioration of perishable goods, obsolescence of seasonal goods, distress sales under court process, or sales in good faith in discontinuance of business in the goods concerned.

**3.** 15 U.S.C. § 1222 provides:

An automobile dealer may bring suit against any automobile manufacturer engaged in commerce, in any district court of the United States in the district in which said manufacturer resides, or is found, or has an agent, without respect to the amount in controversy, and shall recover the damages by him sustained and the cost of suit by reason of the failure of said automobile manufacturer from and after August 8, 1956 to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer: *Provided,* That in any such suit the manufacturer shall not be barred from asserting in defense

of any such action the failure of the dealer to act in good faith.

"Automobile manufacturer," "franchise," "automobile dealer," "commerce" and "good faith" are defined at 15 U.S.C. § 1221.

**4.** N.J.S.A. 56:9–3 provides:

Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce, in this State, shall be unlawful.

**5.** Plaintiffs allege actual damages in excess of $2,266,000.00. Additionally, punitive damages of $1,500,000.00 are sought under the New Jersey Antitrust Act.

**6.** 15 U.S.C. § 15; N.J.S.A. 56:9–12.

**7.** The other alleged co-conspirators include certain persons and corporations operating automobile dealerships under licenses granted by General Motors.

**8.** Amended Complaint, para. 16.

**9.** The relief sought in parts (a), (c) and (d) of the motion for a preliminary injunction is pleaded in the Amended Complaint.

## FINDINGS OF FACT

1. In the Spring of 1974 Judice expressed an interest in purchasing the dealership assets of Crest Pontiac, Inc., Oaklyn, New Jersey, which were then available for sale. Since Judice did not have sufficient capital to finance the dealership, he contacted Motors Holding Division, General Motors (hereinafter "Motors Holding"), which provides capital financing to prospective dealers who do not otherwise have access to the capital necessary to begin a dealership. Early in July a proposal was put together by Judice and the Zone Manager, Philadelphia Zone, Pontiac Motor Division, whereby Judice would form a dealership corporation to replace Crest Pontiac. This proposal was forwarded to the Pontiac Central Office in Michigan on July 18, 1974. Judice's Sunshine Pontiac, Inc. was incorporated as a Delaware corporation on August 19, 1974. On August 26, 1974 the proposal was tentatively approved by Pontiac Motor Division, subject to an investigation by Motors Holding. Subsequently Judice was notified of Motors Holding's approval. On September 19, 1974 a Pontiac Dealer Sale and Service Agreement was entered into between Sunshine Pontiac and Pontiac Motor Division. Sunshine Pontiac is located at 1200 White Horse Pike, Oaklyn, New Jersey.[10]

2. Judice is President, chief operating officer and a member of the Board of Directors of Sunshine Pontiac. As President of Sunshine Pontiac Judice is charged with the responsibility of running the day-to-day operations of the dealership.

3. When General Motors invests capital in dealerships its investment is channeled through the Motors Holding Dealer Investment Plan. The basic scheme of the Plan is that the dealer will invest all his available commercial investment funds, run the day-to-day operation of the dealership and buy out General Motors within a reasonable period of time, thus assuming sole ownership of the dealership.

4. Motors Holding invested $120,000 in Sunshine Pontiac. This investment consisted of $60,000 in Class A voting shares and $60,000 in a loan taking an unsecured promissory note bearing 6% simple interest. Judice invested $40,000 in Class B non-voting shares. This investment consisted of $7,000 of Judice's personal funds and $33,000 borrowed from Progress Venture Capital Corporation, an investment corporation organized to assist minority persons, such as Judice, a Puerto Rican, in business ventures.[11]

5. By virtue of its exclusive control of the Class A voting stock, General Motors has selected the Board of Directors of Sunshine Pontiac. The members of the Board are W. S. Gonne, Branch Manager, Motors Holding, D. J. Ritter, Regional Manager, Motors Holding, and Judice.

6. Through its complete ownership of Sunshine Pontiac's voting stock and its effective control over the Board of Directors, General Motors seeks to and does in fact secure and preserve its substantial investment in Sunshine Pontiac.

7. Pursuant to the Motors Holding Dealer Investment Plan an Option Agreement was entered into between Judice and Gen-

10. Judice maintains that William S. Gonne, Branch Manager for Motors Holding, was prejudiced against him and attempted in various ways to frustrate Sunshine Pontiac, both during the application stage and subsequent thereto. Supplementary Affidavit of Judice in Support of Plaintiffs' Motion for a Preliminary Injunction, para. 4. See note 11, *infra*. Gonne denies these assertions. Supplementary Affidavit of Gonne, paras. 2–4. These allegations and their denials are not germane to the disposition of the essentially procedural questions raised by the pending application. Moreover, such factual disputes cannot be resolved on the basis of affidavits alone. *Industrial Electronics Corp. v. Cline*, 330 F.2d 480, 483 (3rd Cir. 1964); *Eutectic Welding Alloys Corp. v. Zeisel*, 11 F.R.D. 78, 79 (D.N.J.1950); 7 *Moore's Federal Practice* ¶ 65.04[3].

11. The fact that Judice is Puerto Rican is relevant in this action, because it is alleged that the effect of General Motors' actions will be to discourage minority group members from obtaining dealerships and competing with existing dealerships. Amended Complaint, paras. 19(f), 35(g). Sunshine Pontiac is the first Puerto Rican automobile dealership in New Jersey.

eral Motors on September 18, 1974. Judice retains the right under the Option Agreement to purchase all the Class A voting stock owned by General Motors out of stock dividends and bonuses received from Sunshine Pontiac.[12]

8. Judice, acting individually and on behalf of Sunshine Pontiac, commenced this action and engaged counsel to represent him and Sunshine Pontiac. Such action was taken without notice to or consent by Gonne and Ritter, General Motors' representatives on the Board of Directors of Sunshine Pontiac.[13]

9. Plaintiffs' original complaint was filed on June 30, 1975 by the law firm of Pickett and Jennings, Newark, New Jersey. An Amended Complaint was filed by David Berger, P. A., Philadelphia, Pennsylvania, and Pickett and Jennings on September 19, 1975. David Berger, P. A., carries the major responsibility for the litigation of plaintiffs' claims.

10. Prior to the filing of the Amended Complaint a Fee Agreement was entered into between David Berger, P. A., and Judice, individually and on behalf of Sunshine Pontiac, on September 2, 1975. A copy of the Fee Agreement has been supplied to the court, but not to opposing counsel.[14]

11. On October 24, 1975 Gonne delivered to Judice Notice of a Special Meeting of the Board of Directors to be held on October 29, 1975. The purpose of this meeting was to review and act with respect to the filing of this lawsuit, the retention of counsel to prosecute the lawsuit and the disbursement of Sunshine Pontiac's funds, to counsel or otherwise, in connection with the litigation.

12. Judice requested a postponement of the Special Meeting, which was refused. He then moved before the court on October 28, 1975 for a temporary restraining order. The court did not issue such an order. However, it did set the matter down for a hearing on Judice's application for a preliminary injunction, which hearing was held on November 25, 1975. Pending the decision of the court on the instant application, General Motors has held the calling of the Special Meeting in abeyance.

13. If the Special Meeting is held, Gonne and Ritter would vote to terminate the lawsuit on behalf of Sunshine Pontiac, to remove David Berger, P. A., as counsel for Sunshine Pontiac and to refuse to disburse any corporate funds in connection with the prosecution of the lawsuit.

14. Although Article VIII of the Option Agreement provides that General Motors may use its absolute voting power to remove Judice as President and as a director of Sunshine Pontiac, General Motors, through its General Manager, Motors Holding, has represented that it has no present intention to remove Judice.[15]

15. With respect to the present financial condition of Sunshine Pontiac, the court makes no Finding of Fact.[16]

---

12. Option Agreement, Art. II(A) requires Judice to "use all dividends received on his stock and at least one-half of any bonus received by him from Dealer Company to purchase shares of Investor's stock."

13. Salient aspects of the procedural history of this case are highlighted in these Findings of Fact inasmuch as the resolution of the pending application turns upon matters of an essentially procedural nature, relating to the continuing prosecution of this lawsuit by the present plaintiffs, Judice and Sunshine Pontiac.

14. The Fee Agreement, which has not been filed with the Clerk as a matter of record due to its confidential nature, has been modified to the extent that the payment of the retainer has been accelerated. See letter from David Berger, P. A., to the Court, December 2, 1975.

15. Affidavit of William Harvey, III, para. 14. See text accompanying note 17, *infra*.

16. Judice maintains that Sunshine Pontiac is operating and will continue to operate at a profit. Affidavit of Judice in Support of Motion for a Temporary Restraining Order, para. 11. General Motors contends, however, that Sunshine Pontiac has, as of October 1975, lost over $58,000. Affidavit of Gonne, para. 5; Affidavit of Michael F. O'Farrell, Assistant Zone Manager, Philadelphia Zone, Pontiac Motor Division, para. 2. Because the affidavits are in dispute, the court cannot, without more, resolve this factual issue. See note 10, *supra*.

**1218**

### CONCLUSIONS OF LAW

■ Several factors may be considered on an application for a preliminary injunction: first, whether the moving party has made a strong showing that it is likely to prevail on the merits of the controversy; second, whether the movant has demonstrated that it would be irreparably harmed if preliminary injunctive relief is not granted; third, whether the grant of a preliminary injunction would substantially harm other parties interested in the controversy; and fourth, whether the public interest would be served by the granting of a preliminary injunction. *A. O. Smith Corp. v. F. T. C.,* 530 F.2d 515, 525 (3rd Cir. 1976); *Winkleman v. New York Stock Exchange,* 445 F.2d 786, 789 (3rd Cir. 1971); *Ammond v. McGahn,* 532 F.2d 325, 329 (3rd Cir. 1976); *Wuillamey v. Werblin,* 364 F.Supp. 237, 241 (D.N.J.1973); *Helmsley v. Borough of Fort Lee,* 362 F.Supp. 581, 587 (D.N.J. 1973).

■ It cannot be gainsaid that private enforcement of the antitrust laws is deemed to be in the public interest. *Milsen Co. v. Southland Corp.,* 454 F.2d 363, 366 (7th Cir. 1971); *see Hawaii v. Standard Oil Co.,* 405 U.S. 251, 262, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972); *Coleman Motor Co. v. Chrysler Corp.,* 525 F.2d 1338, 1346 (3rd Cir. 1975). Plaintiff's concern to maintain his dealership *pendente lite* warrants judicial recognition. *Cf. Milsen Co., supra* at 367. Underlying the application for a preliminary injunction are these legitimate public concerns. Notwithstanding the substantial public interest in private enforcement of the antitrust laws, the central question remains: will Judice suffer irreparable harm if General Motors is not preliminarily restrained?

■ The moving party bears the burden of demonstrating irreparable harm. *A.*

17. See Finding of Fact No. 14, *supra.*

18. This extreme reluctance to exercise the remedy of an injunction in the absence of immediate and irreparable harm is highlighted in *Holiday Inns of America, Inc. v. B & B Corp.,* 409 F.2d 614, 618 (3rd Cir. 1969):

*O. Smith Corp., supra; Joseph Bancroft & Sons Co. v. Shelley Knitting Mills,* 268 F.2d 569, 574 (3rd Cir. 1959). It is an " . . . elementary principle that a preliminary injunction shall not issue except upon a showing of irreparable injury." *A. O. Smith Corp., supra* quoting *National Land & Investment Co. v. Specter,* 428 F.2d 91, 97 (3rd Cir. 1970). Because the moving party carries such a heavy burden, it is proper to deny relief solely upon a finding that irreparable harm has not been demonstrated. *Oburn v. Shapp,* 521 F.2d 142, 151 (3rd Cir. 1975), citing *Commonwealth of Pennsylvania ex rel. Creamer v. United States Dept. of Agriculture,* 469 F.2d 1387, 1388 (3rd Cir. 1972); *see Skehan v. Board of Trustees of Bloomsburg State College,* 353 F.Supp. 542, 543 (M.D.Pa.1973). Irreparable injury is "substantial injury to a material degree coupled with the inadequacy of money damages." *Tully v. Mott Supermarkets, Inc.,* 337 F.Supp. 834, 850 (D.N.J.1972); *accord, Scott v. Multi-Amp Corp.,* 386 F.Supp. 44, 57 n. 14 (D.N.J.1974).

■ Judice seeks in part (a) of the application to restrain General Motors from removing him from the Board of Directors and as President and chief operating officer of Sunshine Pontiac. William Harvey, III, General Manager of Motors Holding, which controls the entire voting stock of Sunshine Pontiac, has made the following representation:

> Motors Holding has no present plans to vote its shares or take any other action to remove Mr. Judice as a director or President of Judice's Sunshine Pontiac, Inc. (Affidavit, para. 14).[17]

The Harvey Affidavit stands uncontradicted. Manifestly Judice has made "no clear showing of immediate irreparable injury" such as would warrant the exercise of "the delicate power of injunctive relief." *Ammond v. McGahn, supra.*[18]

> We must protect that which is protectable, but, in so doing, we must limit the use of injunctive relief to situations where it is necessary to prevent immediate and irreparable injury. The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used sim-

The threatened harm which plaintiffs[19] seek to restrain in parts (b) and (c) of the application is General Motors' interference in this litigation. Specifically Judice fears that General Motors will use its influence in and control over Sunshine Pontiac to terminate David Berger, P.A., as plaintiffs' counsel and the continued payment by Sunshine Pontiac of costs, including counsel fees. The probability that General Motors will take the threatened action and act to remove Sunshine Pontiac as a party plaintiff is great.[20] Indeed the central focus of General Motors vigorous opposition to plaintiffs' application is the argument that Judice acted in a patently illegal manner when he committed the resources of Sunshine Pontiac to this lawsuit without authorization by its Board of Directors.[21] Notwithstanding the high probability that General Motors will take the threatened action the question remains whether the termination of Sunshine Pontiac as a party plaintiff would constitute irreparable harm.[22] Necessarily involved in the resolution of this issue is Judice's ability to maintain this litigation himself or in a derivative action, since if he is able to do so he will suffer no irreparable harm.

Generally a stockholder of a corporation lacks standing to proceed individually, in his own right, for injuries suffered by the corporation resulting from antitrust violations. *Pitchford v. Pepi, Inc.,* 531 F.2d 92, 96–98 (3rd Cir. 1975), cert. denied, —— U.S. ——, 96 S.Ct. 2649, 49 L.Ed.2d 387 (1976). *Deaktor v. Fox Grocery Co.,* 475 F.2d 1112, 1115 (3rd Cir.), cert. denied, 414 U.S. 867, 94 S.Ct. 65, 38 L.Ed.2d 86 (1973); *Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727, 732 (3rd Cir. 1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971); *Vincel v. White Motor Corp.,* 521 F.2d 1113, 1119 (2nd Cir. 1975); *Schaffer v. Universal Rundle Corp.,* 397 F.2d 893, 896 (5th Cir. 1968); *Korn v. Merrill,* 403 F.Supp. 377, 384 (S.D.N.Y.1975); *Commercial Credit Development Corp. v. Scottish Inns of America, Inc.,* 69 F.R.D. 110, 116–17 (E.D. Tenn.1975). But the injured stockholder is not without a remedy, since he may proceed by way of a derivative action. *Fanchon & Marco, Inc. v. Paramount Pictures,* 202 F.2d 731, 733–35 (2nd Cir. 1953); *Pitchford, supra; Kauffman, supra* at 734; *Schaffer, supra; Korn, supra; Commercial Credit Development Corp., supra; see generally* Comment, "Federal Antitrust Law-Stockholders' Remedies for Corporate Injury Resulting from Antitrust Violations: Derivative Antitrust Suit and Fiduciary Duty Action," 59 Mich.L.Rev. 904 (1961); Fletcher, 13 *Cyclopedia of the Law of Private Corporations* (hereinafter *Law of Private Corporations*) § 5929.[23] A derivative action is a suit to assert the claim of a corporation against an alleged wrongdoer. *Papilsky v. Berndt,* 466 F.2d 251, 255 (2nd Cir.), cert. denied, 409

---

ply to eliminate a possibility of a remote future injury, or a future invasion of rights, be those rights protected by statute or by the common law.

19. The terms "plaintiff's" (meaning Judice) and "plaintiffs'" (meaning Judice and Sunshine Pontiac) are, in the context of this litigation, terms of art. The present alignment of the parties dictates the proper use of the term "plaintiffs'" herein.

20. See Finding of Fact, No. 13, *supra.*

21. Defendant General Motors states in its Brief In Opposition to the Plaintiffs' Application for Preliminary Injunction at 1:

In this case the minority shareholder of a corporation, Plaintiff, Judice, is suing the majority shareholder with the majority's funds. The majority has committed those funds to a Board of Directors for management in accordance with the purposes of the corpora-

tion. In his present Motion, this minority shareholder is asking the Court to approve and perpetuate his conversion of the corporate assets to his personal purposes.

22. Because of the court's resolution of the issue of irreparable harm, *infra,* it is unnecessary to determine whether Judice acted improperly in instituting this litigation on behalf of the corporation, *see* 8 Del.Code Ann. § 141, or whether the interest of the General Motors' directors would preclude them from voting to terminate the action. *See* 8 Del.Code Ann. § 144.

23. Even where the plaintiff is the sole stockholder in a corporation the appropriate remedy is a derivative, rather than an individual, action. *Schaffer, supra. See Kreager v. General Electric Co.,* 497 F.2d 468, 472 (2nd Cir.), cert. denied, 419 U.S. 861, 95 S.Ct. 111, 42 L.Ed.2d 95 (1974).

U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665 (1972); *Sweet v. Bermingham,* 65 F.R.D. 551, 553–54 (S.D.N.Y.1975); *see generally,* 13 *Law of Private Corporations* § 5911; *Smith v. Sperling,* 354 U.S. 91, 99, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957) (Frankfurter, J., dissenting). Fed.R.Civ.P. 23.1 provides the procedural mechanism whereby a derivative action may be brought in federal court.[24]

In this case the gravamen of the complaint lies in General Motors' attempt to drive Sunshine Pontiac, a corporate entity organized under the laws of the State of Delaware, out of business in violation of the antitrust laws. The cause of action, at least on the antitrust claims, would seem to lie with Sunshine Pontiac. But it is obvious (and indeed understandable) that Gonne and Ritter, the controlling directors, will not assert the corporation's claim against General Motors, their employer. This case seems appropriate for the employment of the derivative remedy. *Koster v. (American) Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 522, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); *accord, Fanchon & Marco, Inc., supra* at 734; *Ross v. Bernhard,* 396 U.S. 531, 534, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *Kenrich Corp. v. Miller,* 377 F.2d 312, 314 (3rd Cir. 1967); *Sterling Industries, Inc. v. Ball Bearing Pen Corp.,* 298 N.Y. 483, 491–92, 84 N.E.2d 790, 793 (1949); *Papilsky,* *supra* at 255–56; *Motor Terminals v. National Car Co.,* 92 F.Supp. 155, 162 (D.Del. 1949).[25]

▪ The foregoing discussion suggests that Judice's proper remedy for the alleged antitrust violations lies in a derivative action. However, one court has held that an automobile dealer, who is in the process of gradually acquiring complete ownership of the franchise stock, has an individual antitrust remedy against the automobile manufacturer. *Kolb v. Chrysler Corp.,* 357 F.Supp. 504, 506–07 (E.D.Wis.1973). The *Kolb* Court stated:

> The plaintiff's position in this case is sufficiently different from that of an ordinary stockholder in a corporation for him to maintain this action. The agreement between the parties, which led to this controversy, involved more than just the exchange of money for shares of stock. Among other things, defendants promised plaintiff that he could gradually acquire complete ownership of the franchise by buying more stock with his share of the profits. Since plaintiff was the manager, his reputation, as well as his livelihood, was bound up with the success of the franchise. To hold that antitrust violations which injure the franchise cannot be attacked by the franchisee would subvert the remedial purpose of the antitrust laws.[26]

**24.** Fed.R.Civ.P. 23.1 provides:

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

**25.** If this lawsuit were realigned as a derivative action pursuant to Fed.R.Civ.P. 23.1, Sunshine Pontiac, although the real party in interest, would become a named defendant. Judice, the stockholder, would be the nominal plaintiff. *Ross v. Bernhard, supra* at 538.

**26.** An exception to the general rule favoring derivative actions, *see e. g., Pitchford, supra; Deaktor, supra; Kauffman, supra* at 732, is recognized where the stockholder alleges the violation of a right owed directly to him. *Schaffer, supra; Marcus v. Putnam,* 60 F.R.D. 441, 444 (D.Mass.1973); *Kolb, supra* at 506.

While it is not unrealistic to view the instant action as one involving P. John Judice and General Motors as the real parties in controversy, particularly since Judice is, in practical effect, Judice's Sunshine Pontiac, Inc., *cf. Kavanaugh v. Ford Motor Co.,* 353 F.2d 710, 716 (7th Cir. 1965),[27] *Kolb* has neither been approved nor disapproved in this Circuit.

Even assuming *arguendo* that the *Kolb* rationale were not accepted, Judice would still be able to proceed individually in this lawsuit. Count III alleges a violation of the Automobile Dealers' Day-in-Court Act, 15 U.S.C. § 1222.[28] Under that Act a dealer, such as Judice, who neither owns voting stock in nor otherwise exercises control over Sunshine Pontiac, has a right to proceed individually in his own action. *Rea v. Ford Motor Co.,* 497 F.2d 577, 584 n. 10 (3rd Cir.), *cert. denied,* 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 106 (1974); *Kavanaugh, supra* at 716–18; *York Chrysler-Plymouth, Inc. v. Chrysler Credit*

*Corp.,* 447 F.2d 786, 790–91 (10th Cir. 1971); *see generally Vincel v. White Motor Corp., supra* at 1119–20; *but cf. Lewis v. Chrysler Motors Corp.,* 456 F.2d 605, 606 n. 2 (8th Cir. 1972). Future realignment of this action may thus give rise to a hybrid form of action by Judice, part individual and part derivative.

It is unnecessary, however, to determine whether Judice's proper remedy lies in a derivative or an individual action,[29] since no motion is pending to realign this action, the only matter now under consideration being an application for a preliminary injunction. The nature of the derivative and individual remedies have only been explored to demonstrate that, assuming the Board of Directors of Sunshine Pontiac takes action to terminate Sunshine Pontiac as a party plaintiff, Judice's claims may still be vindicated.

Whether Judice continues this action derivatively or individually, it is plain that he may choose to retain David Berger,

27. It is evident that in processing Judice's application for a dealership, General Motors treated Judice, not Sunshine Pontiac, as the individual applicant. This is understandable since the independent dealer is of paramount and critical importance to the success of Motors Holding Dealer Investment Plan. The Plan states (Harvey Affidavit, Exhibit A, Investment Plan at 2):

> General Motors need outlets for the sale and service of its various consumer products in all markets where those products are salable. In the case of its automotive products, that means practically everywhere. Its policy is to distribute such products through independent merchants, who operate with their own capital and for their own profit. Character, capacity, the willingness to work and ambition to progress, as well as the requisite capital, have long been recognized as essential ingredients in the success of any business. The entire history of enterprise demonstrates the futility of expecting success where any of these prime essentials is lacking to an important degree.

Here an obvious distinction exists between the independent dealer deemed so essential to the sale and distribution of General Motors' automobiles and the corporate dealership which is substantially owned and entirely controlled by General Motors and exists to protect the investment of General Motors. The Dealer Investment Plan calls for Judice to own a steadily increasing percentage and eventually all of the

voting stock of Sunshine Pontiac, see note 12, *supra,* and to have full authority for the operation and management of the dealership. Finally, and perhaps most revealing, the dealership was formed in the name of Judice's Sunshine Pontiac, Inc.

28. The purpose underlying the Act is "to protect a dealer against coercion and intimidation amounting to a lack of good faith as defined by the Act." *R. A. C. Motors, Inc. v. World-Wide Volkswagen Corp.,* 314 F.Supp. 681, 684 (D.N. J.1970); *Rea v. Ford Motor Co.,* 497 F.2d 577, 583 n. 8 (3rd Cir.), *cert. denied* 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 106 (1974). Congress recognized the necessity of "[establishing] a balance of power as between manufacturers and dealers in the automobile industry by curtailing the economic advantages of the larger manufacturers and increasing those of the dealers." *Swartz v. Chrysler Motors Corp.,* 297 F.Supp. 834, 839 (D.N.J.1969), quoting *Woodard v. General Motors Corp.,* 298 F.2d 121, 127 (5th Cir.), *cert. denied,* 369 U.S. 887, 82 S.Ct. 1161, 8 L.Ed.2d 288 (1962).

29. In certain cases "the same allegations of fact might support either a derivative suit or an individual cause of action . . . ." *Borak v. J. I. Case Co.,* 317 F.2d 838, 845 (7th Cir. 1963), *aff'd,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); *see Scott v. Milti-Amp Corp., supra* at 69 n. 30.

P.A., as his counsel. At bottom this application for injunctive relief concerns itself with whether the defendant must assume plaintiff's litigation costs *pendente lite*. The mere statement of the proposition is a recognition of its dubious validity. *See Sterling Industries, supra* 298 N.Y. at 493, 84 N.E.2d at 794. Of salient significance here is the existence of statutory authority which would enable Judice to recover his costs and attorney's fees should he prevail in this litigation. If Judice is successful in prosecuting his federal antitrust claims then he is entitled to recover "three-fold the damages . . . sustained, and the cost of suit, including a reasonable attorney's fee." 15 U.S.C. § 15.[30] Treble damages are also recoverable under the New Jersey Antitrust Act, as are reasonable attorney's fees and costs. N.J.S.A. 56:9–12(a).[31]

 The termination of this lawsuit by the Board of Directors of Sunshine Pontiac would not and should not mark the end

of this litigation, since Judice could proceed derivatively or individually with, it may be added, counsel of his own choice. Quite probably it would become more expensive for Judice . to maintain this litigation alone.[32] But if this litigation is allowed to run its normal course, Judice will be made whole as will his counsel, assuming, of course, that he prevails on the merits.[33] It follows, therefore, that Judice has failed to demonstrate irreparable harm. As stated in *Virginia Petroleum Jobbers Association v. F. P. C.*, 104 U.S.App.D.C. 106, 259 F.2d 921, 925 (1958):

> Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*See A. O. Smith, supra; Tully v. Mott Supermarkets, Inc., supra.*[34]

**30.** The reasonable attorney's fees provision is designed to insure that the successful antitrust plaintiff retain his full trebled damages award, a portion of which would, absent such provision normally go to his attorney. *Farmington Dowel Products Co. v. Foster Mfg. Co.*, 421 F.2d 61, 86 n. 57, 88–89 (1st Cir. 1970). Factors which influence the amount of the award include: time spent by counsel, the nature of the legal questions presented and counsel's skill in treating such questions, the traditional fee for services of a similar nature, counsel's standing and recognition in the Bar and, perhaps most important, the beneficial result obtained. ABA Antitrust Section, *Antitrust Law Developments* 299 (1975). Similar factors govern the granting of counsel fees in a derivative action. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974), cert. denied, 422 U.S. 1048, 95 S.Ct. 2666, 45 L.Ed.2d 700 (1975).

**31.** Concerning costs, N.J.S.A. 56:9–12(a) provides: "Reasonable costs of suit may include, but shall not be limited to the expenses of discovery and document reproduction."

**32.** Assuming, as Judice maintains, that the discovery process would consume more time and expense if Sunshine Pontiac were placed in a position adverse to him, see note 25, *supra*, such additional injury, if any, would be compensable, 15 U.S.C. § 15; N.J.S.A. 56:9–12(a), and thus reparable. *Virginia Petroleum Jobbers Association v. F. P. C.*, 104 U.S.App.D.C.

106, 259 F.2d 921, 925 (1958); *A. O. Smith, supra; Tully v. Mott Supermarkets, Inc., supra.* Although the discovery process may become more difficult, Fed.R.Civ.P. 37 is available to compel discovery wrongfully withheld.

**33.** The right to recover counsel fees and costs is less explicit and certain under the Automobile Dealers' Day-in-Court Act, though to be sure the contingent fee agreement which has been entered into between Judice and counsel makes provision in this regard. In any event, should Judice only prevail under the Automobile Dealers' Day-in-Court Act, he still would be compensated to the extent of the injury suffered.

**34.** It is possible that Sunshine Pontiac's termination as a party plaintiff may cause Judice to terminate this litigation due to a lack of funds necessary to maintain the litigation *pendente lite*. Such harm, though seemingly irreparable, *Virginia Petroleum Jobbers, supra*, is simply not harm of a legally cognizable nature such as would warrant the interposition of the court's extraordinary equitable power. While the Sixth Amendment of the United States Constitution requires that all criminal defendants be afforded the assistance of counsel, at the expense of the State if necessary, *e. g. Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the engagement of counsel by a civil litigant in the presently existing legal marketplace is principally dependent upon the litigant's financial capabilities.

Because the moving party has failed, with respect to parts (a), (b) and (c) of the motion, to demonstrate irreparable harm, the application for a preliminary injunction must be denied. *E. g. Oburn, supra.* This being so, it is unnecessary to consider whether Judice has demonstrated a likelihood of success on the merits. *Ammond v. McGahn, supra.*

Lastly part (d) of the application wherein Judice seeks an order restraining General Motors from "[overriding] any decision made by . . . Judice, where said decision directly involves plaintiffs' relationship with General Motors," must be considered. Fed.R.Civ.P. 65(d) is dispositive of this request for relief. Rule 65(d) provides that an order granting an injunction "shall be specific in [its] terms" and "shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." This requirement serves the necessary purpose of affording the party to be restrained notice of the proscribed conduct. *Schmidt v. Lessard,* 414 U.S. 473, 476, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974); *United States v. Schiavo,* 504 F.2d 1, 8 n. 17 (3rd Cir.), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 690, 42 L.Ed.2d 688 (1974); *see generally* 7 *Moore's Federal Practice* ¶ 65.11. Rule 65(d) is "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders." *Schmidt v. Lessard, supra.*

The order which Judice seeks is neither specific in its terms nor does it describe in reasonable detail the conduct sought to be restrained. The proposed order is so sweeping in its overbreadth—"any decision" made by Judice—that it would "place the entire conduct of [Sunshine Pontiac's] business under the jeopardy of punishment for contempt for violating" the injunction. *Russell C. House Transfer & Storage Co. v. United States,* 189 F.2d 349, 351 (5th Cir. 1951); *accord, Sanders v. Air Line Pilots Association, International,* 473 F.2d 244, 248 (2nd Cir. 1972). Moreover, the proposed order is so vague in its language—"decisions directly [involving] plaintiffs' relationship with General Motors"—*Hartford-Em-*

*pire Co. v. United States,* 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322 (1945), citing *Swift & Co. v. United States,* 196 U.S. 375, 396, 25 S.Ct. 276, 49 L.Ed. 518 (1905), that it fails to afford General Motors notice as to the conduct to be proscribed. *Schmidt v. Lessard, supra.*

If Judice can in the future point to specific and unlawful conduct by General Motors which "directly" involves his relationship with General Motors, then it would be appropriate for the court to consider ordering injunctive relief, provided, of course, that the traditional criteria for the granting of such relief are satisfied. But as presently framed by the plaintiff, the court finds itself incapable of fashioning an injunctive order which would satisfy the precise requirements of Rule 65(d).

Plaintiffs' request for a preliminary injunction is denied. Counsel for the defendants shall submit an appropriate order.