570 F.2d 1184
 Joanne CHESIMARD (Assata Shakur), Appellant,
v.
Robert MULCAHY, Commissioner, Department of Corrections, and
William Fauver, Deputy Commissioner, Department of
Corrections, and Richard Seidl, Supervising Superintendent,
State Prison Complex, Department of Corrections and Thomas
Lynch, Superintendent, Yardville Youth Reception and
Correction Center.
 No. 77-1684.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 5, 1978.
Decided Feb. 3, 1978.
 
 Lennox S. Hinds, Leora Mosston, Evelyn A. Williams, New Brunswick, N. J., for appellant.
 William F. Hyland, Atty. Gen. of N. J., Joseph T. Maloney, Deputy Atty. Gen., Trenton, N. J., for appellees.
 OPINION OF THE COURT
 Before ADAMS and GARTH, Circuit Judges and WEINER,* District Judge.
 ADAMS, Circuit Judge.
 
 
 1
 This is an appeal from an order of the District Court of New Jersey denying an application for a preliminary injunction against the continued incarceration of Joanne Chesimard (also known as Assata Shakur) in the all-male New Jersey state prison in Yardville.
 
 A.
 
 2
 On March 25, 1977, Shakur was found guilty by a New Jersey jury of the murder of a state policeman, and was sentenced to life imprisonment. She was incarcerated on March 28, 1977, in the Clinton Reformatory, the only prison for women in New Jersey. Because Shakur was viewed as a high security risk[1] New Jersey officials considered it necessary to undertake stringent measures to prevent her escape. Adoption of such measures at Clinton, a relatively low-security institution,[2] created a tense situation there, leading to a work stoppage among the other prisoners who complained about the presence of additional armed guards. In order to relieve this situation, as well as to achieve greater assurance that escape attempts would not succeed, the New Jersey prison authorities on April 7, 1977, transferred Shakur to the Yardville Youth Reception and Correctional Institution. Inasmuch as Shakur was the only female prisoner at Yardville, she was not permitted to associate with the male inmates, but was confined to a solitary (albeit relatively commodious) cell specially constructed for her.[3]
 
 
 3
 Asserting that the conditions of her confinement violated her constitutional rights in a number of regards, Shakur brought a civil rights action under 42 U.S.C. §§ 1981 and 1983, challenging her confinement at Yardville. After two hearings, Judge Clarkson Fisher denied Shakur's motion for a preliminary injunction on May 5, 1977. His decision emphasized the temporary nature of her placement at Yardville. A timely appeal was filed from that order.
 
 
 4
 Subsequent to the filing of the appeal, Shakur was transferred from Yardville to New York City in connection with criminal charges pending against her there. She remains in New York at the present time.
 
 
 5
 At oral argument, counsel were requested to file affidavits defining the present status of Shakur's New York incarceration, and New Jersey's plans for Shakur's future confinement.
 
 
 6
 According to an uncontradicted affidavit of William Fauver, Deputy Commissioner of the New Jersey Department of Corrections, "it is the professional opinion of the officials of the Department of Corrections that (upon her return to New Jersey's custody,) Ms. Chesimard should be transferred to an out-of-state facility" where she can be securely imprisoned in the company of other women. Further, Mr. Fauver avers that it is the intention of the New Jersey Correction Department to begin the process of transferring Shakur to an out-of-state facility immediately upon her return to New Jersey. That process, according to the affidavit includes seventy-two hours notice, and a hearing. Following the hearing, Mr. Fauver states, a decision will be rendered within two days. An affidavit from Mr. William Faulkner, of the New Jersey Bureau of Interstate Services, attests that New Jersey officials have a written agreement from the Federal Correctional Institution for Women in Alderson, West Virginia, to accept Shakur as a prisoner on twenty-four hours notice.
 
 
 7
 Since the oral argument before this Court, Judge Fisher has ordered that a hearing regarding issuance of a permanent injunction will be held on February 7, 1978, or within forty-eight hours of Shakur's return to New Jersey if such return occurs sooner.
 
 B.
 
 8
 The primary issue in this appeal is whether the district court's denial of temporary relief should be reversed. A litigant challenging the denial of a preliminary injunction bears a heavy burden. Oburn v. Shapp, 521 F.2d 142, 147 (3d Cir. 1975); Scooper Dooper, Inc. v. Kraftco, 460 F.2d 1205 (3d Cir. 1972). "(O)ur scope of review is limited to: . . . 'determining whether there has been an abuse of discretion, an error of law, or a clear mistake in the consideration of the proof.' " Oburn v. Shapp, supra, at 147 quoting Commonwealth of Pennsylvania ex rel. Creamer v. United States Department of Agriculture, 469 F.2d 1387, 1388 (3d Cir. 1972). Such allegations of infirmity moreover, must be evaluated in the context of the prerequisites for the issuance of a preliminary injunction: a litigant must show probability of eventual success in the litigation and that he will be irreparably injured if the injunction is not granted. Oburn v. Shapp, supra, at 147; Systems Operations Inc. v. Scientific Games Development Corp., 555 F.2d 1131, 1141 (3d Cir. 1977); United States v. Commonwealth of Pennsylvania, 533 F.2d 107, 110 (3d Cir. 1976); Ammond v. McGahn, 532 F.2d 325, 329 (3d Cir. 1976). Additionally, the trial judge, in exercising his discretion, should take into account the possibility of harm to other persons who may be affected by the injunction, as well as the public interest. Id.
 
 C.
 
 9
 In this case, Shakur raised a number of objections to her confinement at Yardville. She claimed:
 
 
 10
 1) that state law and custom gave her justifiable expectation, and hence a protected liberty interest, in being placed in a prison for women, an expectation of which she was deprived without due process of law.
 
 
 11
 2) that her confinement alone was an illegal infringement on her freedom of association.
 
 
 12
 3) that her indefinite solitary confinement constituted cruel and unusual punishment.
 
 
 13
 4) that her confinement arbitrarily denied her access to the rehabilitative facilities of the prison system, in violation of the equal protection clause, and5) that she was being treated differently from other prisoners on the basis of her prior statements and associations in violation of her rights under the First and Fourteenth Amendments.
 
 
 14
 To warrant reversal of the trial court's determination, Shakur must demonstrate that the district court abused its discretion both in holding that she has no probability of eventual success on any of these causes of action, and in holding that she will not be irreparably harmed as a result of the violation of her rights before a trial can be held. We conclude that no such showing has been made.
 
 
 15
 As to Shakur's first point, even assuming that she has a liberty interest in remaining in a female prison, there is no evidence in the record that she is currently being deprived of this interest while she is in New York. Moreover, the New Jersey authorities have evidenced an intention to transfer Shakur to Alderson, a female prison, within five days of her return to New Jersey, and her asserted liberty interest will in all probability be vindicated within that period of time.[4]
 
 
 16
 In any event, according to the affidavits we have before us, Shakur will be provided with a hearing by the New Jersey prison authorities within seventy-two hours of her return to New Jersey custody, and with a hearing before Judge Fisher within forty-eight hours of such return, at the latest. Under these circumstances, we cannot say that she has demonstrated any probability that she is being or will be deprived of a liberty interest without due process of law. See Gray v. Creamer, 465 F.2d 179, 185 n.6 (3d Cir. 1972).
 
 
 17
 Similarly, regarding Shakur's second and third assertions, we can find no reversible error in Judge Fisher's determinations that a preliminary injunction was not necessary to protect Shakur against deprivation of her right to association, or against cruel and unusual punishment. Judge Fisher's decision was based on assurances that Shakur's confinement at Yardville was a temporary expedient. These assurances have now been reinforced by the affidavits before us. Since there is no allegation that Shakur is currently confined alone, the only injury to her that denial of an interlocutory injunction could bring about is a three to five day deprivation of association under the conditions outlined above pending her transfer to Alderson, a women's prison.
 
 
 18
 Assuming arguendo that a right to association exists for prisoners, we cannot find error in Judge Fisher's determination that a brief deprivation such as that which may still be imposed both serves a substantial state interest and is not demonstrably greater than necessary to serve that interest. See Procunier v. Martinez, 416 U.S. 396, 413, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Cf. Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) (prisoners retain rights not inconsistent with legitimate penological objectives); Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (semble ). And counsel has proffered no support for the contention that a three to five day deprivation of association amounts to cruel or unusual punishment. We thus can perceive neither irreparable injury pendente lite, nor a probability of success on either of these two issues. Likewise, without deciding whether denial of access to rehabilitative programs violates Shakur's equal protection rights, we emphasize that any such denial will only be a short one, and hence does not constitute the irreparable injury necessary to support issuance of a preliminary injunction.
 
 
 19
 Finally, we cannot say that there has been an abuse of discretion, an error of law, or a clear mistake in the consideration of proof by Judge Fisher in rejecting Shakur's contention that she is treated differently from other prisoners simply because of hostility to her political views. She has been imprisoned in New Jersey for murder. Her co-defendant was a part of a violent escape scheme in which one person was killed. There is unrefuted evidence that Shakur is a member of a self-described group of "urban guerillas." Such information is sufficient for the trial judge in a preliminary injunction proceeding to reject the inference that Shakur is being punished for the exercise of her first amendment rights, rather than being subjected to close supervision in the interest of prison security.
 
 
 20
 Accordingly, the order of the district court will be affirmed and the mandate shall issue forthwith.
 
 
 
 *
 Honorable Charles R. Weiner, U. S. District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The New Jersey authorities based their evaluation on the violent nature of Shakur's crime, and on her connection with the "Black Liberation Army", a self-described "urban guerilla" organization. New Jersey prison officials, on the advice of New Jersey state police, believed that the existence of a network of "Black Liberation Army" contacts outside of prison made escape attempts particularly probable. Indeed, Shakur's co-defendant, Clark Squires, has recently been indicted on charges of murder and attempt to escape, arising out of an effort to violently obtain his freedom from confinement
 
 
 [2]
 Clinton is a prison camp surrounded by only wire fences. It has no guard towers
 
 
 [3]
 According to the findings of the trial judge who personally examined the facility, Shakur was confined in the largest cell in Yardville, measuring 109 square feet. The cell, which was a converted office, contained tables and chairs and a radio. A television set in a larger adjoining room was available for Shakur's use, and she had access to both telephone and mail. The windows of the cell could be opened to admit fresh air, and Shakur was permitted to exercise in a large gymnasium. In addition, she was permitted to see attorneys in the evenings and has retained her own books, papers and clothing
 
 
 [4]
 Cf. Ammond v. McGahn, 532 F.2d 325, 329 (3d Cir. 1976) (where Democratic party caucus had decided not to exclude plaintiff in the future, no irreparable injury warranted preliminary injunction)