## LARSON et al. v. GENERAL MOTORS CORPORATION.

District Court, S. D. New York.
July 11, 1941.

Murray M. Cowen, of New York City, for plaintiffs.

Drury W. Cooper and Drury W. Cooper, Jr., both of New York City, for defendant.

CONGER, District Judge.

Plaintiffs have sued the defendant for damages on two causes of action; this trial was of the first; with the second we are not concerned, as it is not in issue here, and will not be considered by me, either directly or indirectly. In the second cause of action plaintiffs sue for an alleged submission of an idea to defendant in connection with an alleged novel seating arrangement in an automobile body; that plaintiffs notified defendant of their idea, and that thereafter defendant used plaintiffs' idea without paying for it.

In the first cause of action the plaintiffs complain that defendant for a long time prior to the commencement of the suit had been infringing plaintiffs' letters patent No. 1983983, by using it in connection with the automobiles which it manufactured and sold to the public.

Plaintiffs complain that defendant's conduct was wilful and treble damages are asked in the sum of $12,000,000.

Defendant in its answer denies generally the alleged infringement and as an affirmative defense and counterclaim attacks the validity of plaintiffs' patent, asking for a declaratory judgment declaring plaintiffs' patent to be invalid and/or not infringed. Declaratory Judgment Act, § 274d, Judicial Code, 28 U.S.C.A. § 400.

At the outset, and before the actual trial took place there was presented to the Court for determination two questions: (1) the alleged infringement by the defendant; and (2) the validity of plaintiffs' patent.

At the opening of the trial and before testimony was taken, plaintiffs admitted in open court that they did not claim any infringement on the part of the defendant; they withdrew the first cause of action charging such infringement; they further amended their reply to defendant's counterclaim, and in and by this amendment plaintiffs admitted paragraphs 31, 32 of defendant's counterclaim. These are the paragraphs in said counterclaim in which defendant sets forth that it is not and has not been infringing upon said patent; and further, plaintiffs, in open court and before trial, actually offered to allow judgment on the merits to be entered in favor of the defendant and against the plaintiffs on this first cause of action. This would seem at first blush to dispose of the controversy presently before the Court, but there arises the disposition of defendant's counterclaim.

Plaintiffs concede that on the proof, defendant is entitled to a dismissal on the merits, and contend that plaintiffs are entitled to a dismissal of the defendant's counterclaim for declaratory judgment on the ground (1) that no actual controversy existed between plaintiffs and defendant with respect to plaintiffs' patent; and (2) that if there had been one, a complete adjudication of the said dispute will be made

by the dismissal on the merits of plaintiffs' first cause of action.

Defendant claims, however, notwithstanding the withdrawal of the first cause of action by plaintiffs, and notwithstanding a decision in favor of defendant and against plaintiffs on the merits, that the counterclaim must be passed upon and may not be dismissed. This, of course, brings into issue the validity of plaintiffs' patent.

The first question to be decided therefor is whether there was anything for the Court to try after the admission of noninfringement by the plaintiffs, the withdrawal of the first cause of action with prejudice against the plaintiffs, and the offer by the plaintiffs to allow judgment against them on the first cause of action. Does the Court have the right then to try defendant's counterclaim? Is there an actual controversy between the parties so as to give life to defendant's counterclaim for a declaratory judgment?

■ A controversy in this sense must be one that is appropriate for judicial determination. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000.

Certainly, prior to the commencement of this action, there was such a controversy. On February 8, 1934, plaintiff Larson wrote to defendant telling of his invention, and gave a description thereof. On February 20, 1935, both plaintiffs wrote to defendant giving it notice of the patent No. 1983983, and again describing it. On June· 6, 1935, Larson again wrote to defendant and in this letter charged that he, Larson, had seen the patented idea in use on one of defendant's automobiles, an Oldsmobile Club Coupe. On February 23, 1937, plaintiffs' attorney wrote to defendant in which letter are these two significant statements:

"Referring to your use of auxiliary or 'middle seats' in coupe automobile bodies, it is clear your use of same has been infringement of patent No. 1983983, issued to Louis Larson and Edward Johnstone. * * *.

"I would like to inquire now what you propose to do to adjust damages for the infringement of this patent before legal action is taken."

Certainly, at this point, there was a real controversy between the parties, and the seeds of a controversy at this time had sprouted to such an extent that the Court could take notice of it. The plaintiffs were then charging infringement by the defendant and threatened action. I am satisfied defendant at this time could have commenced an action under the Declaratory Judgment Act for an adjudication of its rights against the present plaintiffs as to the matter in controversy.

In May, 1939, this action was commenced by plaintiffs, and the defendant, very properly in its answer, among other defenses, by way of counterclaim raised the issue of its infringement and validity of plaintiffs' patent. On the eve of trial, plaintiffs withdrew their first cause of action which. charges infringement. Does this preclude the trial of the counterclaim? I think not. Just a day or two before this trial, Judge Knox of this court passed on this question at a pre-trial conference. There the plaintiffs made the same motion, but Judge Knox refused to sign the proposed order and endorsed on the papers the following: "Upon consideration of plaintiffs' request that.they be permitted to discontinue their cause of action in this suit and that, thereupon, the counterclaim of defendant be dismissed, I am of the opinion that plaintiffs' application should have been denied instead of granted. For that reason, I am not signing the within order and plaintiffs' application for such relief will be denied."

■ The counterclaim was properly interposed. The plaintiffs by coming voluntarily into this court subject themselves to the jurisdiction of the court in respect to all possible counterclaims. Dewey & Almy Chemical Co. v. Johnson, Drake & Piper, Inc., D.C., 25 F.Supp. 1021; Kohloff et al. v. Ford Motor Co., D.C., 29 F.Supp. 843. Plaintiffs at this late date cannot withdraw their first cause of action and thus render moot defendant's counterclaim.

The language of Judge Woolsey, in the case of Knaust Bros. v. Goldschlag, D.C., 28 F.Supp. 188, 190, is pertinent to the situation presented here:

"I do not think that in the case of a patent, which is a claim of monopoly hanging over a trade, the plaintiff can suddenly, at the last moment, withdraw his claim of infringement and then claim, as the plaintiff's counsel now seeks to do, that the

question of validity has become moot. [Citing cases].

"I think the plaintiff itself created a controversy by asserting the validity of the four claims of that patent and an infringement thereof. Meinecke v. Eagle Druggists Supply Co., D.C., 19 F.Supp. 523, 525. Inasmuch as a controversy was thus created by itself, the plaintiff cannot now, having once blown hot, be allowed to blow cold and claim that there was not any controversy."

I will now take up the question of the validity of plaintiffs' patent No. 1983983. I am only concerned whether the patent is valid, and hence whether it contains an invention or patentable novelty over the prior art. In none of the specified claims of the patent is it stressed as a patentable novelty the idea of placing inside the body proper of an automobile of the coupe type, seats between the operator's seat and the rear body wall, although on the trial plaintiffs did imply that this feature was an invention. The piracy of this alleged idea is the basis of plaintiffs' second cause of action.

The patent in suit specifies three claims; claim 3 of which may be taken as representative. This claim is stated: "3. In an automobile body of the coupe type, a passenger compartment wholly within the cabin of the body between the operator's seat and the rear deck of the body, said passenger compartment having therein means for seating the occupant thereof and a member normally bridging the space between the back of the operator's seat and the deck and serving as an article supporting shelf, said member being pivoted at one edge to the back of the operator's seat and adapted to be swung inwardly of the aforementioned compartment to serve, in the latter position, as a back rest, and means for releasably securing said member in shelf functioning position."

Claim 1 is practically the same, but it is not limited to any special automobile body. Claim 2 differs from Claim 3 in that it is not limited to a body of the coupe type, and in addition it specifies "cushions mounted on the side walls of the body and constituting back rests for the second-named seats."

The defendant has submitted prior patents and publications, as well as testimony and exhibits showing defendant's own prior use of this method of seating passengers in coupe type automobiles. All of the above was prior to April 3, 1934, the date of application of plaintiffs' patent, and prior to February 3, 1934, the date of plaintiffs' first notice to defendant.

In examining the prior patents, it is found that the auxiliary seats are not new. In the Menzer patent 640007 (1899) hinged parts to form a seat, a back rest for both double and single accessory seats, may be located in a back extension of a vehicle body which is protected by a "boot" when not needed. True this patent is not for the inside of a "closed" body, or for a coupe type body, but the principle of auxiliary seats is there shown. The British patent of De Dion Bouton 243121 (1925) shows an "occasional" seat of a collapsible type which fits into a pocket of the body when not in use. When in use it is substantially the form of opera seats used by defendant. Furthermore this patent discloses these seats in a coupe body, exactly similar to the use made by defendant herein. Auxiliary or opera seats, therefore, are old in the art.

Nor can the fact that in plaintiffs' patent the auxiliary seat is reversed with the back of the operator's seat be considered an invention, for this is shown in the Jones patent No. 1734213 (1926) which was cited by the United States Patent Office.

Plaintiffs have made much of the fact that in their patent the back rest of the seat when not in use can be released from where it joins the seat, to form a shelf in back of the operator's seat. The old Mitchell patent No. 171238 (1875), although issued for railway sleeping cars, and not for automobile bodies, shows substantially the hinging of a seat, or back rest, with a releasable part so that it could be swung upwards to form a shelf. The fact that this element was adopted for use in an automobile body is nothing more than mechanical skill, and is not invention.

The defendant has also produced publications of prior dates which show various types of opera or auxiliary seats from 1907 to 1933. This feature, therefore, was not new when plaintiffs obtained their patent.

The plaintiffs have intimated that the invention or patentable novelty in their patent is that their patent is the first in the art to utilize the space behind the operator's seat usually provided in the cabin part of an automobile of the coupe type, for the accommodation of passengers or occupants.

Defendant has submitted, on this particular portion of the patent, four prior publications which show seats in the space above referred to. The publication Autocar, of

October 12, 1928, shows occasional folding seats in back of the operator's seat and within the cabin of the body in a Mann Egerton coupe; the publication Autobody, of May, 1929, shows a Weymann Coupe and a Talbot coupe with the same arrangement. The magazine Motor, of August, 1931, shows a Ford convertible coupe with "the third passenger sitting side-wise behind the other two." This passenger sat within the body proper, and it was noted therein that "the space may also be used for luggage by removing the seat, although there is also a trunk at the rear." The publication Autobody Trimmer & Painter, of September, 1933, shows a custom coupe on a Cord chassis with occasional seat in the same space claimed by plaintiffs to be the basis of their invention.

It has been proved herein that the Fleetwood Unit of the Fisher Body Division of defendant, General Motors Corporation, in May 1933, started on the development of opera or additional seats for a new line of coupe bodies for Cadillac automobiles. Drawings were made and finished by October, 1933, and a body according to the specifications there designed was manufactured and delivered to the Cadillac Motor Car Company in December, 1933. There was testimony and documentary evidence submitted that Fleetwood bodies of this design, so manufactured and mounted on Cadillac chassis were shown to dealers as early as December, 1933. It was also proved that one of these automobiles, featuring the elements of the patent in question, was shipped to New York as a show car on January 2, 1934; and from there to various other shows, and later sold. Another car featuring the same elements, but of the convertible type, was shipped to a dealer in San Francisco. All of the above was prior to April 3, 1934, the application date of plaintiffs' patent, as well as prior to February 8, 1934, the earliest date that the plaintiffs sent defendant a description of their purported invention.

It should also be noted that defendant's use of these opera seats, within the body proper, which was commenced in 1933, did not then cease, for other divisions of defendant took up these opera seats in their coupes on the following dates; Pontiac, 1935; Oldsmobile 1935 or 1936; La Salle, 1935; Buick, 1936; Chevrolet, 1939. Hence, as far as defendant is concerned, it was not an abandoned experiment.

Plaintiffs, in an attempt to contradict this testimony, have made much of the fact that in copies of the monthly publication Motor, which once each year includes all pertinent facts of the new automobiles exhibited at the Annual Show of Automobiles, did not, in the 1934, 1935 and 1936 issues, show the seating arrangement which defendant has testified was in their 1934 model of the Fleetwood body for Cadillac automobiles, and thereafter in other models. In fact, plaintiffs point out, it was not until the 1937 model that the Oldsmobile first advertised the following:

"No Rumble

"There is a trend toward seating Coupe passengers inside as shown in this Oldsmobile equipped with folding auxiliary seats."

The editor of this magazine observed in this same issue: "Rumble seated coupes are being discarded in favor of new seating arrangements in which the extra passengers are housed within the body."

However, this negative evidence, submitted by plaintiffs, is not conclusive. It is true that the 1934 model of Fleetwood body with opera seats is not shown in this particular magazine, but this does not mean that such a seating arrangement did not exist at that time. In fact, the positive testimony is overwhelming to the contrary.

The fact that in 1937 models, the Oldsmobile coupe was equipped with folding auxiliary seats, and was so advertised by defendant, does not give rise to the inference that General Motors Corporation had not used the seating arrangement before. It is merely an advertising expression that this feature was new to the Oldsmobile coupe at that time.

■ I have not considered the argument advanced by defendant that the patent is invalid as not being the joint creation of the plaintiffs Louis Larson and Edward Johnstone, but of Louis Larson alone. Inasmuch as I believe the patent in suit is invalid for want of invention, I feel that a decision on this phase of the case is unnecessary.

Accordingly the defendant is entitled to a decree dismissing plaintiffs' first cause of action for infringement, and granting defendant's counterclaim for a declaratory judgment that plaintiffs' patent No. 1983983 is invalid.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, then submit findings and conclusions, on notice, in accordance therewith.