Edward T. MOLINARO, Anthony P. Catanzaro

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY.

Civ. A. No. 75–847.

United States District Court, E. D. Pennsylvania.

Nov. 24, 1978.

---

E. Leigh Hunt, Wilmington, Del., Anthony P. Catanzaro, pro se.

John L. Cline, Chicago, Ill., Michael O. S. Floyd, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

EDWARD R. BECKER, District Judge.

This is a patent case which is before us on the motion for summary judgment of defendant American Telephone & Telegraph Company (AT&T). AT&T's motion is based upon its contention that a prior adjudication in another lawsuit operates as a matter of law to preclude plaintiffs Edward Molinaro and Anthony Catanzaro from asserting their claims in this action. We agree with AT&T's view of the legal effect of the prior judgment, and because of certain admissions of fact made by Molinaro on the record we grant AT&T's motion with respect to Molinaro's claims. However, there may remain one area of material factual dispute between Catanzaro and AT&T, so we have concluded that only a partial summary judgment on Catanzaro's claims is appropriate at this time.

Plaintiffs commenced this action in March of 1975, charging that AT&T's Improved Mobile Telephone System (IMTS) infringed their now-expired U.S. Patent No. 2,906,875, entitled "Station Sampling Radio."[1] It is undisputed that all of the allegedly infringing equipment used by AT&T is obtained from other sources. The record shows that Motorola, Inc. and General Electric Company (GE) are two such sources, and Molinaro concedes that they are the only two sources.[2] Catanzaro suggests that there may be other sources of supply, but there is nothing in the record to support this contention.

The instant suit is one of a number of infringement actions brought by plaintiffs involving Patent No. 2,906,875,[3] but for present purposes only the litigation involving AT&T's two established sources of supply of the allegedly infringing equipment, GE and Motorola, is pertinent. Plaintiffs' suit against GE, filed in the United States District Court for the Southern District of New York, was settled in April of 1975 with the grant of a license by plaintiffs to GE. Under the terms of that settlement AT&T

---

1. Plaintiffs' infringement allegations, a detailed analysis of which is unnecessary for the purposes of this motion, focus on a particular type of radio receiver. In the most general terms plaintiffs allege that any station sampling radio receiver which automatically scans the radio frequency spectrum and "seeks signals", and stops and stays at a particular signal for either a predetermined period of time or until the signal terminates, infringes plaintiffs' patent. This reading of plaintiffs' patent may be undermined by the holding in *Catanzaro v. Masco Corp.*, 423 F.Supp. 415 (D.Del.1976), *aff'd, see* 575 F.2d 1085, 1086 (3d Cir. 1978) in which plaintiffs sued upon the same patent in issue at bar. Judge Stapleton held that the patent was not broad enough to cover "termination of signal" type scanning receivers. Although this ruling binds plaintiffs under *Blonder-Tongue Laboratories v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the AT&T equipment involved in the instant suit is not classic "termination of signal" equipment, and there is insufficient record evidence for us to decide whether the equipment at issue in *Masco* is similar enough to the equipment at issue here to bind plaintiffs under the *Blonder-Tongue* collateral estoppel doctrine. AT&T suggests, and we agree, that our decision on this motion does not depend upon the correctness of plaintiffs' reading of their patent.

2. *See* correspondence dated October 21, 1978, from E. Leigh Hunt, counsel for Molinaro, to this effect.

3. All of plaintiffs' actions have been brought *pro se,* as was the instant action. However, E. Leigh Hunt, Esquire, recently entered an appearance on behalf of Molinaro. Catanzaro is still proceeding *pro se.*

was absolved of liability for any allegedly infringing acts involving equipment it purchased from GE. Plaintiffs conceded at oral argument on this motion that their settlement with GE and their subsequent grant of a license to GE absolves AT&T of any liability arising out of its use of GE-supplied equipment, so the only disputed issue before us is whether AT&T can incur liability to plaintiffs by reason of its use of Motorola-supplied equipment.[4] Plaintiffs' suit against Motorola (Delaware suit), filed in the District of Delaware and making essentially the same allegations of infringement as are made here, was dismissed "with prejudice" pursuant to Fed.R.Civ.P. 37(b)(2)(C) and 37(d) for failure to comply with discovery orders.[5]

In this motion for summary judgment AT&T contends that in light of: (1) the settlement with GE; (2) the judgment of dismissal with prejudice in the Delaware suit; and (3) plaintiffs' failure to identify any source of supply of AT&T's IMTS equipment other than GE and Motorola, plaintiffs are precluded from asserting their infringement claims against AT&T. Particular significance is attached by AT&T to the fact, appearing of record and undisputed, that Motorola, as supplier of the allegedly infringing equipment, is paying for and controlling the defense of this suit and has agreed to indemnify AT&T against any liability arising therefrom.

In their papers in opposition to AT&T's motion, plaintiffs concede that their settlement with GE immunizes AT&T from liability resulting from its use of GE-supplied equipment, but they dispute AT&T's interpretation of the legal effect of the dismissal of their Delaware suit against Motorola, and of the AT&T-Motorola customer-supplier relationship. Catanzaro further submits that he has not had an adequate opportunity to discover whether AT&T has any other sources of supply of the allegedly infringing equipment.[6]

We agree with AT&T that under both substantive patent law and modern theories of *res judicata* the dismissal with prejudice of the Delaware suit precludes plaintiffs from asserting any infringement claims against AT&T by reason of its use of equipment supplied by Motorola. The rule of substantive patent law set forth in *Kessler v. Eldred,* 206 U.S. 285, 27 S.Ct. 611, 51 L.Ed. 1065 (1907) is alone sufficient to support our result. There the manufacturer, Kessler, had obtained a judgment of non-infringement in a suit brought against him by a patentee, Eldred. Eldred, however, continued to sue and to threaten suits against Kessler's customers on account of their use of products purchased from Kessler. The Court held that Kessler was entitled to an injunction against such activity by Eldred, basing its decision not on notions of collateral estoppel or *res judicata,* but rather on the Court's view that:

> Leaving entirely out of view any rights which Kessler's customers have or may have, it is Kessler's right that those customers should, in respect of the articles before the court in the previous judgment, be let alone by Eldred, and it is Eldred's duty to let them alone.

206 U.S. at 289, 27 S.Ct. at 613.

Courts soon recognized that the rationale underlying the *Kessler* doctrine would support the assertion not only by a manufacturer, but also by a customer, of the preclu-

---

4. A copy of the pertinent portions of plaintiffs' agreement with GE is part of the record in this case.

5. In his April 26, 1977, unpublished opinion Judge Stapleton noted that plaintiffs had been warned of the possible consequences of their unexcused failure to provide discovery as ordered by the court, and characterized plaintiffs' noncompliance with the court's orders as "willful." The Third Circuit affirmed the judgment of dismissal at 575 F.2d 1085 (3d Cir. 1978) in an appeal by Catanzaro alone. In an October 19, 1978, memorandum opinion Judge Stapleton denied Molinaro's Rule 60(b)(1) Motion for Relief from Judgment in the same case.

6. Except as to Catanzaro's claim that via further discovery he may be able to establish that AT&T has some other source of supply of the allegedly infringing equipment, the case presents no genuine issue of material fact. Instead it poses only the question of the legal effect of the prior proceedings in the case.

sive effect of a prior judgment in favor of the manufacturer-supplier and against the patentee. *See, e. g., General Chemical Co. v. Standard Wholesale Phosphate & Acid Works, Inc.,* 101 F.2d 178 (4th Cir. 1939). Indeed the *Kessler* Court itself recognized the interests and needs of the customer in such situations in remarking that "[n]o one wishes to buy anything if with it he must buy a lawsuit." 206 U.S. at 289, 27 S.Ct. at 613.

Our analysis of the applicability of the *Kessler* doctrine is not altered by the fact that the infringement question in the instant case was not actually litigated in the Delaware suit. *Larson v. General Motors Corp.,* 134 F.2d 450 (2d Cir.), *cert. denied* 319 U.S. 762, 63 S.Ct. 1318, 87 L.Ed. 1713 (1943) is instructive on this point. Like plaintiffs' Delaware lawsuit, *Larson* had commenced in the district court as a patentee's infringement suit against a manufacturer. Additionally, as in plaintiffs' Delaware suit, the *Larson* plaintiffs' infringement claim had been dismissed on the merits.[7] In *Larson* plaintiffs appealed from two judgments entered against them in the same lawsuit after their infringement claim was dismissed. One of these judgments was in favor of defendant upon a counterclaim to plaintiffs' infringement claim, while the other dismissed plaintiffs' second cause of action.[8] Writing for the court in reversing the second of these judgments, Judge Learned Hand discussed the effect of the judgment dismissing plaintiffs' infringement claim on the merits, distinguishing it from a dismissal not on the merits:

> [A] judgment dismissing the first cause of action upon the merits put an end to any controversy as to those [articles] which the plaintiffs had alleged to in-

fringe . . . . It was unlike the judgment which we held not to bar a declaratory action in *Leach v. Ross Heater & Mfg. Co.* [104 F.2d 88 (2d Cir. 1939)], for that was not upon the merits and did not bar a second action. Moreover, the bar of the judgment [is] available to the defendant's customers, as well as to the defendant, for they are regarded as privies to such a judgment.

134 F.2d at 453.

In the case at bar it is clear that the judgment dismissing plaintiffs' complaint "with prejudice" has the same effect as the *Larson* dismissal "on the merits." In other words, the judgment of dismissal in plaintiffs' first suit bars a second action by plaintiffs (the patentees) against both Motorola (the manufacturer) and AT&T (its customer), even though the merits of plaintiffs' infringement claim were never actually litigated.

Both the language and the policy underpinnings of the Federal Rules of Civil Procedure also support this conclusion. Although plaintiffs' first suit was dismissed pursuant to Fed.R.Civ.P. 37, Rule 41(b) clearly governs the effect of all involuntary dismissals. The rule provides in pertinent part:

> Involuntary Dismissal: Effect Thereof. . . . Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision, and *any dismissal not provided for in this rule,* other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, *operates as an adjudication upon the merits.* (emphasis added).[9]

---

7. *See Larson v. General Motors Corp.,* 40 F.Supp. 570 (S.D.N.Y.1941). The infringement claim in *Larson* had been dismissed upon plaintiffs' stipulation that defendant had not infringed the patent, while in the instant suit the dismissal was for failure to comply with discovery orders. The *Larson* court characterized the dismissal as "on the merits" in spite of the fact that, as in the instant suit, the merits were never actually litigated.

8. The *Larson* plaintiffs' second cause of action, not relevant for our purposes, was for damages for defendant's alleged appropriation of an idea imparted to it in confidence.

9. Plaintiffs cite *Papilsky v. Berndt,* 466 F.2d 251 (2d Cir. 1972) for the proposition that Rule 41(b) does not bar a second action after a dismissal pursuant to Rule 37, but that case holds only that in a stockholder's derivative

*Accord, Gambocz v. Yelencsics,* 468 F.2d 837 (3d Cir. 1972) citing *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 327, 75 S.Ct. 865, 99 L.Ed. 1122 (1955) for the proposition that "[d]ismissal with prejudice constitutes an adjudication of the merits as fully and completely as if the order had been entered after trial." 468 F.2d at 840.

Plaintiffs make much of the fact that the dismissal of their Delaware suit was under Rule 37 for failure to comply with discovery and that the infringement issues raised therein were never resolved, but in doing so they ignore the strong policy reasons that a Rule 37 dismissal must be given the effect just described. In *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam) the Court discussed the policies underlying a Rule 37 dismissal:

> [T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

427 U.S. at 643, 96 S.Ct. at 2781. Judge Stapleton's judgment dismissing plaintiffs' Delaware suit would be deprived of its impact as both a sanction against plaintiffs and a deterrent to others if plaintiffs were permitted to prosecute this action. Though plaintiffs point out that their infringement claims were never actually litigated, they have not alleged that they were in any way deprived of "a fair opportunity procedurally, substantively and evidentially to pursue [their] claim the first time." *Cf. Blonder-Tongue Laboratories Inc. v. University of Illinois Foundation,* 402 U.S. 313, 333, 91 S.Ct. 1434, 1445, 28 L.Ed.2d 788 (1971). (A plea of estoppel by an infringement or royalty suit defendant may be defeated with a demonstration by plaintiff that he was deprived of this opportunity.) In sum, we cannot, consistent with either the Federal Rules of Civil Procedure and their underlying policies or the *Kessler* doctrine, permit plaintiffs to proceed against AT&T with claims based on Motorola-supplied equipment in light of the judgment of dismissal "with prejudice" of plaintiffs' Delaware suit against Motorola.

■ Our disposition of this motion is mandated by established principles of *res judicata* as well as by the *Kessler* doctrine of substantive patent law. The applicable principles were first set forth in this Circuit in *Bruszewski v. United States,* 181 F.2d 419 (3d Cir. 1950). *Bruszewski* was explained by Judge Hastie, its author, in his dissent in *Nickerson v. Kutschera,* 419 F.2d 983 (3d Cir. 1969) as follows:

> It was our view in *Bruszewski* . . . that . . . a party who as plaintiff had asserted a claim and had lost should not be heard again on the merits of that claim even in a second suit which he thereafter has instituted against a stranger to the original claim.

419 F.2d at 985. In *Bruszewski* the court held that *res judicata* may be invoked against a plaintiff who has previously asserted essentially the same claim against a different defendant where there is a significant relationship between the successive defendants. Judge Hastie's dissent in *Nickerson* was provoked by the court's refusal to apply the *Bruszewski* doctrine to patent cases, but his position was vindicated two years later in *Blonder-Tongue Laboratories v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), where the Court quoted extensively from Judge Hastie's *Bruszewski* opinion in abandoning, for all practical purposes, the requirement of mutuality of estoppel in patent cases.

Clearly the identity of plaintiffs' claims in this action with those in the Delaware suit, together with the manufacturer-supplier relationship between the successive de-

---

action a judgment of dismissal for failure to comply with discovery orders does not bind non-party stockholders who are not given notice of the proposed dismissal. The instant case is easily distinguishable because it was plaintiffs themselves whose failure to comply with court orders brought about the dismissal of the first suit.

fendants Motorola and AT&T, creates precisely the kind of situation in which the *Bruszewski-Blonder-Tongue* line of cases permits the defendant in the second suit, in this case AT&T, to invoke the doctrine of *res judicata* against plaintiffs. The record discloses that the devices accused to infringe the patent in suit in this case were purchased by AT&T from Motorola pursuant to an agreement dated November 13, 1963, and that, pursuant to that agreement, Motorola has at all times controlled the defense of AT&T in this action.[10] Judgment was entered against plaintiffs on the merits [11] in their Delaware suit, and under *Bruszewski* it is of no moment whether the infringement issue was actually litigated or not. The principle of *res judicata* applies not only in favor of Motorola, the original defendant, but also in favor of any other defendant closely enough related to Motorola to be encompassed by the *Bruszewski* rule. AT&T, as purchaser from Motorola of the same equipment that was in issue in the original suit, is sufficiently related to Motorola to come easily within the rule and thus to be entitled to invoke *res judicata* against plaintiffs.

Under the doctrines of both *Kessler* and *Bruszewski,* and because of the terms of plaintiffs' settlement with GE, AT&T is entitled to summary judgment on those of plaintiffs' claims that allege infringement by reason of AT&T's use of equipment supplied by Motorola or GE. Molinaro has conceded on the record that these are AT&T's only sources of supply of the allegedly infringing equipment, so we grant AT&T's motion for summary judgment against Molinaro on all of Molinaro's claims. Catanzaro has not conceded that Motorola and GE are AT&T's only sources of supply, so we grant AT&T's motion in part and deny it in part on Catanzaro's claims. We grant summary judgment on Catanzaro's claims that GE- and Motorola-supplied equipment infringe plaintiffs' patent. However, because Catanzaro claims that he has not had an opportunity to complete discovery on the question whether AT&T had another source of supply, we will, for now, deny summary judgment on Catanzaro's claims that equipment supplied by other manufacturers infringes plaintiffs' patent.[12] Catanzaro will be accorded sixty days within which to conduct discovery for the limited purpose of determining whether any supplier other than GE and Motorola furnished AT&T with its IMTS equipment. Absent some such showing on Catanzaro's part, summary judgment will be entered for AT&T and against Catanzaro on all of Catanzaro's claims.

---

10. *See* affidavit of John L. Cline, attorney for defendant AT&T, and Exhibit A, the AT&T-Motorola agreement, attached thereto.

11. *See* discussion at pp. 675–676 of text, *supra.*

12. Substantial discovery has already been taken on this point, revealing no other suppliers.